Wm. H. Hildreth, John Hildreth and A. K. Hildreth v. David Hancock.

1. EXEMPLARY DAMAGES—*The Proper Measure of.*—Exemplary damages may well be proportioned to the extent of the injury intended rather than that actually done, for that is a truer measure of the wantonness and malice for which they are imposed.

Hildreth v. Hancock.

Memorandum.—Trespass. In the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Declaration for an assault and battery; pleas of the general issue and *son assault demesne;* trial by jury; verdict for plaintiffs $1,300, and judgment; appeal by defendants. Heard in this court at the May term, 1894, and affirmed. Opinion filed November 2, 1894.

LAWRENCE & LAWRENCE, attorneys for appellants.

PALMER, SHUTT, DRENNAN & LESTER and SALMANS & DRAPER, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Appellee obtained judgment below on a verdict for $1,300 damages against appellants for assault and battery. The only reasons for its reversal urged on this appeal are that the verdict of guilty was not supported by the evidence, and that if it was, the damages are excessive.

We find in the record some three hundred typewritten pages of testimony, conflicting on all material points. On the part of the plaintiff it clearly tended to prove that on May 9, 1893, William H. Hildreth, being dissatisfied with his removal of a little piece of fence which he claimed the right to remove, in the presence of a number of persons, cursed and threatened him in very emphatic language, declaring among other things that he would have his two sons, the other defendants, whip and beat him and drive him out of the country; that on the 14th John undertook to whip him, in which his father, coming up after the fight commenced, attempted to aid him, and was prevented by a bystander, but was worsted in the encounter; and that A. K. Hildreth, on the 20th made a premeditated and unprovoked assault upon him with a club conceded to have been a deadly weapon, in which assault his brother John also took part. It does not appear that either of the boys previously had any personal difficulty or cause of quarrel with the plaintiff, but each is said to have expressed a purpose to beat him very shortly before his alleged assault.

On the part of defendants it tended to prove that on the occasion first above mentioned the old man did not threaten personal violence, by his boys, or otherwise, but only that he would have the plaintiff imprisoned—put behind the bars; that he did not advise John's attempt on the 14th, and had no knowledge of that of the 20th, or of the intention to make it until after it occurred; that John interfered in the last affair only to separate the parties fighting and prevent injury by, or to, either; and that A. K., who filed a plea of *son assault demesne*, acted only in self-defense.

In a case necessarily involving so much of angry feeling, interest and bias of the parties, all of whom testified, and of their respective friends and associates among the other witnesses, whose testimony as to the words spoken and acts committed, which make up the case on each side, is in such direct conflict or so variant in coloring, the oft noted advantage of the judge and jury before whom it was tried, from seeing and hearing them testify, is very apparent.

The trespass here complained of is that alleged to have been committed on May 20, 1893, which was at the elevator dump in Hildreth, in the county of Edgar, and the cause was tried in Vermilion county, from which fact the presumption of impartiality on the part of the jury is perhaps all the stronger. No error in the instructions of the court prejudicial to the defendants is pointed out in the argument on their behalf, but the plaintiff was held to a greater measure of proof than the law warranted. As it appears in the record there was certainly enough to support the finding on the issues presented.

It seems that to a large extent the damages assessed must have been intended as exemplary. Plaintiff received a blow on the head from the club, causing a scalp wound which was not serious. He lost from his work, by reason of his injuries, only four days, and was out for surgical services only ten dollars. No great amount of pain is complained of nor any permanent disability. It may be conceded that exemplary damages may well be proportioned to the extent of the injury intended rather than to that

Hildreth v. Hancock.

actually done, for that is a truer measure of the wantonness
and malice for which they are imposed. But there is diffi-
culty here in determining what extent of injury was
intended. Much greater might have resulted in fact with-
out an actual intention to do so much. Natural conse-
quences of the deliberate use of a weapon calculated to pro-
duce them, however serious, are presumed from such use
alone, to have been intended. But in many cases such use
is not the only proof of the intention. Our criminal code
contemplates such use of such a weapon with intent only
to do a bodily injury, and limits the punishment in such
case, even where no considerable provocation appears or the
circumstances show an abandoned or malignant heart, to a
fine ranging in amount from $25 to $1,000, or imprisonment
in the county jail for a term not exceeding one year, or
both, in the discretion of the court, and it is well known
that in such cases, where the penalty imposed consists of a
fine only, it is often less than $100, and rarely equals half
the maximum amount allowed by the statute. True, this is
all by the way of punishment, but here the actual damage
appears quite inconsiderable in proportion to the whole
amount assessed.

From all the evidence there is reason to think that the
intention was not to kill or permanently cripple the plaintiff,
but to do him so much bodily injury as would overpower
and humiliate him, to punish him soundly on the father's
account, and put him in fear for the future of the combined
power and disposition of the family. A lesser sum would,
perhaps, have fully compensated him, and taught them and
others like minded that the law in Illinois is stronger for
the protection of the weak and the redress of their wrongs
than any combination of family or faction, to inflict them
with impunity.

But a purpose on the part of three to seriously injure the
person of one by means of supposed superior power, pre-
concerted, persisted in and accomplished in wantonness or
malice, is tyranny pure and simple, and so justly odious that
a jury, without undue passion, might well be liberal in

their allowance of punitive damages against such wrong-doers.

Doubtless they were satisfied that this was such a case. Perhaps also they intended to make each defendant feel the force and effect of their verdict and expected that the damages would be in fact distributed by them for payment, for each was fully chargeable with the wrong.

But whatever may have been their views on the subject, while from one standpoint alone we would be better satisfied with a less amount than that found, it would seem presumptuous to set aside the conclusion of the jury in respect to a matter peculiarly within their province, with better means for a proper determination, and so largely also of discretion to be exercised with reference to these means. The judge presiding on the trial, with the same means, who was earnestly appealed to, saw nothing in the case to warrant his interference with that conclusion, and after due consideration we are unable to assign any clear and satisfactory reason for so doing. The judgment will therefore be affirmed.