EMBASSY/MAIN AUTO LEASING COMPANY, Plaintiff-Appellee, v. C.A.R. LEASING, INC., *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 85—3656, 86—1711 cons.

Opinion filed April 27, 1987.

Michael B. Metnick and D. Peter Wise, both of Metnick & Barewin, of Springfield, for appellants.

Stephen P. Sinnott, of Sinnott & Kromelow, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Jerry Sklar (Sklar), appeals from an award of punitive damages against him and an award of attorney fees and expenses to plaintiff, Embassy/Main Auto Leasing Company, under section 2—611 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—611). He does not appeal from the judgments against him for misappropriation of trade secrets and tortious interference with prospective business relations.

Sklar contends that (1) the award of punitive damages was inappropriate and excessive, and (2) the award of section 2—611 fees and expenses was inappropriate. For the reasons that follow, we affirm.

Mike Bass (Bass) formed Embassy Auto Leasing (Embassy), a long-term automobile leasing business, in about 1965 or 1966. In ap-

proximately 1968, Bass moved the business to 6449 North Lincoln Avenue, Lincolnwood, Illinois. An adjacent building housed Redwood Cleaners, which Sklar operated. Marvin Field owned both buildings, but Sklar acted as landlord for the Embassy building. Over the years, Sklar and Bass became acquaintances.

In 1980, Bass computerized Embassy. The computer system, which was used to generate business documents, stored amortization charts which listed customers' names and addresses and confidential information concerning Embassy's leases. Each amortization chart run off had Embassy's name printed in the upper left hand corner of the document. The charts were the only lists of customers that Embassy stored on computer. The sole people with access to the computer were Florence Baran, who was Embassy's office manager, Mike Bass, and Cheryl Bass, Mike's daughter. Ms. Baran kept a binder of current amortization charts in her desk drawer during the day and locked the binder in a file cabinet at night. Old charts were kept in a file cabinet in a back room.

In November 1981, Main Auto Leasing Company (Main) acquired the assets of Embassy and became Embassy/Main Auto Leasing Company (Embassy/Main). The purchase price was in excess of $2 million, of which $500,000 was allocated to Embassy's 300 or more current leases. Main was part of the Airway Transportation Group and Company (Airway), a group of automotive companies, including auto rental, auto leasing, and limousine service companies. Most of the Airway companies were owned by Ridgeview Motors, Inc., which was owned by David Zaransky (Zaransky) and members of his family. Airway had an O'Hare facility for storage of noncurrent business records of its companies and for disposal of outdated business records.

Embassy/Main stayed at the Lincoln Avenue address until May 1982, when it moved to Dempster Street in Skokie. At that time, Sklar informed his friend, defendant Sonny Fox (Fox), of the available space on Lincoln Avenue. Zaransky, however, had already arranged for someone else to lease the empty space.

Fox was part owner of defendant C.A.R. Leasing (C.A.R.), a long-term automobile leasing business. C.A.R. was located three blocks north of the former Embassy/Main building on Lincoln.

Embassy/Main stored old records and unused furniture at the Lincoln Avenue building until August 1982, when the remainder of its items were moved to Dempster Street. After Embassy/Main moved, Sklar arranged to have a large fluorescent sign removed from on top of the old Embassy/Main building and placed on top of

Redwood Cleaners. However, Zaransky asked Sklar to return the sign, which he did.

In August 1982, Sklar somehow obtained a computer-printed list of names and cars. How Sklar obtained the list is still in dispute because the trial court made no findings as to this fact. At trial Sklar testified that one day when he went to the washroom in back of Redwood Cleaners, he looked out of the open bathroom window and saw extra garbage, not his, in his dumpster. He went outside and saw file drawers full of papers in the dumpster. He then took a computer-generated document out of the garbage. The document contained a list of names, addresses, phone numbers, dates, and cars.

Both Zaransky and Dick Leverton, Zaransky's assistant, testified that during the move to Skokie, old documents were not dumped anywhere except at the O'Hare facility. During the move Zaransky used a system which was normally used whenever Airway acquired a new company. Items were boxed and marked for shipment to either: (1) the Skokie office, (2) the O'Hare facility for storage, or (3) the O'Hare facility for disposal.

Sklar testified that after he found the computer printout in his dumpster, he went inside, called Fox and told him to come over because he had something in which Fox might be interested. When Fox arrived, Sklar showed him the document. Sklar offered to give him the list, but Fox refused, and instead took handwritten notes and copied down approximately 50 to 60 of the names listed. Sklar testified that he did not recall telling Fox the list was of Embassy/Main customers, but on cross-examination he admitted it was possible he did tell that to Fox. In addition, Fox testified that Sklar told him the list was of Embassy/Main customers.

Subsequently, Fox sent solicitation letters to those 50 or 60 names. He followed up with two more mailings. Fox then threw out his handwritten list.

Embassy/Main sued Sklar, Fox, and C.A.R. Leasing. Its three-count complaint alleged: (I) misappropriation of trade secrets, (II) conversion of business documents, and (III) tortious interference with prospective business relations.

After the plaintiff's case in chief, the court directed a verdict for all three defendants on count II. But, after the bench trial, the court held for the plaintiff and against all three defendants on counts I and III. The court awarded plaintiff $9,171 in actual damages against all three defendants, and $50,000 in punitive damages against only Sklar.

The trial court found, among other things, the following. Sklar

made it impossible to believe anything he said on the witness stand and was the most discredited witness the court had ever seen in a courtroom. The court concluded that Sklar was motivated by malice and gained nothing of value from his actions except intentionally and wilfully to harm Zaransky and Embassy/Main. On the other hand, the court found that Fox and C.A.R. were motivated by corporate greed in a highly competitive business and not by malice. Therefore, the court assessed punitive damages against only Sklar.

After the judgment, plaintiff filed a petition for fees and expenses against Sklar pursuant to section 2—611 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—611), based on Sklar's answer in which he denied part of paragraph eight of count I of plaintiff's second amended complaint. Plaintiff requested 75% of its fees and expenses from the date of the untrue pleading through the judgment date, which amounted to $10,906.47. Plaintiff also asked for 100% of its fees and expenses after judgment, which amounted to $4,510.82.

The court found the following: Sklar's pleading was knowingly untrue; liability was the key issue at trial; and, there would have been no trial but for Sklar's false pleading. Therefore, the court found that awarding 100% of plaintiff's fees and expenses through the judgment date would have been appropriate. However, the court awarded only 50%, $7,270.97. The court also awarded 100% of fees and expenses after the judgment date, $4,510.82, for a total amount of $11,781.79.

Sklar first contends that there was no basis for the award of punitive damages because there was no evidence of aggravating circumstances. He admits plaintiff proved the causes of action against him, but alleges that plaintiff failed to prove he acted with malice. He argues that the court strung together a series of weak inferences that fell far short of establishing malice, wilfulness, or wantonness. In addition, he asserts that the court abused its discretion in awarding punitive damages against only Sklar, and not Fox and C.A.R., because plaintiff could not have been injured without the other defendants' actions in addition to Sklar's. In the alternative, Sklar contends that the award of punitive damages was excessive.

■■ Punitive damages are penal in nature. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210.) Their purpose is to deter the defendant and others from committing the same offense in the future. The objectives of punitive damages, therefore, are the same as in the criminal law, punishment and deterrence. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d

353; *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509.) Punitive damages are not a favorite in the law (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199) and should only be allowed with caution and confined within narrow limits (*Quad County Distributing Co. v. Burroughs Corp.* (1979), 68 Ill. App. 3d 163, 385 N.E.2d 1108, *appeal denied* (1979), 75 Ill. 2d 594). Courts must take caution to insure that they are not improperly or unwisely awarded. *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

Whether to assess punitive damages in a particular case is a question of law. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) A trial court's determination will not be disturbed absent an abuse of discretion. (*Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047, *appeal denied* (1985), 102 Ill. 2d 555.) However, punitive damages are recoverable only when aggravating circumstances exist, such as malice, wantonness, wilfulness, fraud, or oppression. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.

■ Malice is a question of fact to be determined by the trier of fact. (*Miller v. Simon* (1968), 100 Ill. App. 2d 6, 241 N.E.2d 697.) It has been defined as an intent to do wrongful harm and injury without just cause. *Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 366 N.E.2d 319.

■ In the case at bar, we find that the trial court did not abuse its discretion in awarding punitive damages against Sklar. The trial judge, who observed all of the witnesses, listened to their testimony, and judged their credibility, determined that Sklar had lied and plaintiff's witnesses had told the truth. Contrary to Sklar's assertions, the record reveals that the trial court exercised caution in determining whether punitive damages were warranted and that the court did not go out of its way to find Sklar acted with malice.

In carefully considering this issue and concluding that Sklar's conduct was malicious, the trial judge found that: Sklar's mannerisms were hostile; his story was contrived; he had been impeached; his testimony was unbelievable; his recollection of events was selective; he gained nothing of value by his actions; and simply, Sklar was out to hurt Embassy/Main. Furthermore, the court did not abuse its discretion in awarding punitive damages against Sklar alone, because Fox, a competitor of the plaintiff, was motivated by competition, not malice. See *Candalaus Chicago, Inc. v. Evans Mill Supply Co.*

(1977), 51 Ill. App. 3d 38, 366 N.E.2d 319.

■ The next question is whether the damages awarded were excessive. The measure of punitive damages is a question for the trier of fact. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) A reviewing court will reduce an award of damages only when they are clearly excessive. However, there are no clear guidelines in Illinois for determining when such awards are excessive. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199.) It is clear that the damages awarded need not be proportional to the amount of the compensatory damages. (*E.g., Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199; *Allabastro v. Cummins* (1980), 90 Ill. App. 3d 394, 413 N.E.2d 86, *appeal denied* (1981), 83 Ill. 2d 569.) However, they may be assessed to the extent of the injury intended rather than that actually done; for, that may be a truer measure of wantonness and malice. *Hildreth v. Hancock* (1894), 55 Ill. App. 572, *aff'd* (1895), 156 Ill. 618, 41 N.E. 155.

■ The trial court carefully reasoned that $50,000 would be an appropriate amount of punitive damages by relying on the proposition that punitive damages may be awarded to the extent of the injury intended. (*Hildreth v. Hancock* (1894), 55 Ill. App. 572, *aff'd* (1895), 156 Ill. 618, 41 N.E. 155.) The court determined the potential injury to plaintiff was the loss of $500,000, which was the value of Embassy's current leases at the time Zaransky purchased Embassy from Mike Bass. Instead of awarding plaintiff the entire $500,000, however, the court exercised restraint and awarded only $50,000 or 10% of the potential injury. The court concluded that any lesser amount would encourage others to take the gamble as did Sklar and would seem to make the risk worth taking. Sklar has failed to show how this award is clearly excessive. Consequently, reversal is not warranted.

Sklar relies on *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 444 N.E.2d 579, *aff'd in part, rev'd in part per curiam* (1984), 99 Ill. 2d 528, 459 N.E.2d 1332, where the Illinois Supreme Court reversed an award of punitive damages in a suit for tortious interference with contractual relations. However, the supreme court in that case gave no reason for the reversal. Therefore, we derive no significance merely from the fact that the cause of action in that case was similar to one of the causes of action in the instant case.

Sklar next contends that the trial court improperly awarded plaintiff section 2—611 attorney fees and expenses because plaintiff

failed to meet its burden of proving that they were actually incurred by the untrue pleading and the method plaintiff used to arrive at the amounts was arbitrary and capricious. We disagree.

Section 2—611 provides that a party who pleads falsely shall pay reasonable attorney fees and expenses. (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.) That section has two requirements: (1) the pleading must be made without reasonable cause, and (2) it must be untrue. (*Mancuso v. Beach* (1986), 149 Ill. App. 3d 188, 500 N.E.2d 589; *In re Application of Cook County Collector* (1986), 144 Ill. App. 3d 604, 494 N.E.2d 536.) The movant maintains the burden of proving the two elements required under section 2—611. *Mancuso v. Beach* (1986), 149 Ill. App. 3d 188, 500 N.E.2d 589.

Although section 2—611 is penal in nature and must be strictly construed according to its terms (*Mancuso v. Beach* (1986), 149 Ill. App. 3d 188, 500 N.E.2d 589; *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 466 N.E.2d 945, *appeal denied* (1984), 101 Ill. 2d 581), whether to award such fees and expenses, as well as the amount assessed, lies within the sound discretion of the trial court (*McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 448 N.E.2d 905, *appeal denied* (1983), 96 Ill. 2d 541). The trial court's decision in this matter is entitled to great weight and will not be disturbed unless a clear showing of abuse of discretion is shown. (*In re Application of Cook County Collector* (1986), 144 Ill. App. 3d 604, 494 N.E.2d 536.) Ordinarily a trial court's decision is not disturbed on review. *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 466 N.E.2d 945, *appeal denied* (1984), 101 Ill. 2d 581.

In the case at bar, we find that the trial court did not abuse its discretion in awarding section 2—611 fees and expenses to plaintiff. In his answer, Sklar denied that at the time he obtained Embassy's customer list, he knew the list was the confidential, sole, and exclusive property of Embassy and he knowingly provided the list to C.A.R. and Fox. The trial court found this denial to be false. It also found that although there were two issues at trial, liability and damages, liability was the key issue, and there would have been no trial but for Sklar's untrue pleading.

During the section 2—611 hearing, Sklar stipulated that (1) the hours Mr. Sinnott, plaintiff's attorney, stated in his affidavit supporting the section 2—611 motion were actually expended, and (2) the hourly rate charged was reasonable. In addition, Sklar now admits that his pleading was untrue, but he offers no reasonable explanation why he lied. Therefore, the two elements of section 2—611 have

been met: (1) the statement was made without reasonable cause, and (2) it was untrue.

Sklar argues, however, that plaintiff failed to prove its fees and expenses were actually incurred "by reason of" the untrue pleading, because Mr. Sinnott's affidavit was vague. In addition, Sklar contends that the percentage of fees and expenses plaintiff chose, 75%, was arbitrary and capricious.

Mr. Sinnott's affidavit was in fact generalized; however, as do many attorneys, Mr. Sinnott did not keep records of his time detailing which of the hours he spent on this case were directly caused by Sklar's untrue pleading. It would be ludicrous to expect that Mr. Sinnott kept track of his hours as to that detail before and during trial, especially because he did not know the pleading was untrue at those times. In addition, he cannot be expected to retroactively compute those exact hours. This was not the intent of section 2—611; for, where a false pleading made without reasonable cause is the cornerstone of an entire lawsuit, it is not necessary to focus on each specific reimbursable component. See *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 466 N.E.2d 945, *appeal denied* (1984), 101 Ill. 2d 581.

■ Because Sklar has not clearly shown that the trial court abused its discretion in awarding plaintiff 50% of its fees and expenses through the judgment date, reversal is not warranted. In addition, the court's award of 100% of plaintiff's fees and expenses, after the judgment date, for its prosecution of the section 2—611 petition was also proper. *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 466 N.E.2d 945, *appeal denied* (1984), 101 Ill. 2d 581.

In summary: we affirm the judgment of the trial court awarding plaintiff $50,000 in punitive damages and $11,781.79 in attorney fees and expenses.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.