BOSCH DIE CASTING COMPANY, INC., Plaintiff-Appellant, v. LUNT
MANUFACTURING COMPANY, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—0724

Opinion filed February 21, 1992.—Rehearing denied November 5, 1992.

Benjamin P. Hyink and Regina A. Scannicchio, both of Hyink & Scannicchio, P.C., of Chicago, for appellant.

George A. Joseph and Helen E. Witt, both of Kirkland & Ellis, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

A judgment in favor of defendants Lunt Manufacturing (Lunt), Helmut Brandt, Ilse Brandt, George Hirsch, Barbara Hirsch and G & M Die Casting Company, Inc., and against the plaintiff, Bosch Die Casting Co., Inc. (Bosch), was entered in this case on August 2, 1988, and a post-trial motion was entered on August 30, 1988. On September 1, 1988, the defendants filed a motion for attorney fees and costs. On May 22, 1988, the trial court entered an order finding Bosch and Bosch's counsel liable for attorney fees and costs. On February 7, 1989, a judgment was entered against the plaintiff for attorney fees and costs (and not against plaintiff's former counsel). Plaintiff's post-trial motion to modify and clarify was denied on March 9, 1990. This is an appeal from the trial court's granting of the defendants' motion for sanctions pursuant to section 2—611 of the Illinois Code of Civil Procedure. Ill. Rev. Stat. 1983, ch. 110, par. 2—611 (effective July 1, 1982); Ill. Rev. Stat. 1987, ch. 110, par. 2—611 (effective November 25, 1986).

The judgment on the merits of the underlying case was the subject of a separate appeal (No. 1—88—2904) by the plaintiff to this court. On March 26, 1991, this court denied a motion to consolidate the two appeals. This court dismissed the appeal on the merits (No. 1—88—2904) on April 24, 1991, and on October 2, 1991, the Illinois Supreme Court denied Bosch's petition for leave to appeal in that matter, under Illinois Supreme Court No. 72016.

FACTS

In September of 1980 Bosch filed a complaint in chancery against defendants Lunt, Helmut Brandt, Ilse Brandt, George Hirsch, Barbara Hirsch and G & M Die Casting Company, Inc. The complaint concerned the ownership of stock in Lunt. Bosch contended that it owned

two-thirds or 50 of the 75 outstanding shares of Lunt. Defendants all contended that Bosch had never owned any Lunt stock. Discovery and other trial preparation continued for over seven years. Trial finally commenced in the case on November 9, 1987.

On that date, new counsel for Bosch filed a motion for partial summary judgment, contending that the ultimate issue of the ownership of Lunt had been previously decided by a jury in another case. Bosch's counsel represented to the trial court that he had been "charged by my client's president [Mr. Bork], to present our case relying on this motion for summary judgment based on *res judicata* and collateral estoppel and our testimony in this case would or should take no longer than an hour, upon which time we will rest."

The basis for the motion was a Georgia case entitled Wyco, Inc. v. Bosch Die Casting Co., Inc. & Lunt Manufacturing Co., Inc. The Wyco case was tried in the superior court of Fulton County, Georgia (Civil Action No. C. 9008). The trial court took all pending motions under advisement and conducted a trial on various dates between December 9, 1987, and March 21, 1988. At the close of the plaintiff's case, plaintiff renewed its motions for partial summary judgment and motions *in limine*, and defendants filed their motion for judgment at the close of plaintiff's case pursuant to section 2—1110 of the Illinois Code of Civil Procedure. Ill. Rev. Stat. 1987, ch. 110, par. 2—1110.

On July 12, 1988, the trial court denied Bosch's motion for summary judgment and rejected its *res judicata* theory. The court found that Bosch's representation that there had been an actual finding by the Georgia jury on the issue of ownership of Lunt was not true:

"THE COURT: *** I don't think there's any question from the statements of both parties from the record that has been submitted to me in the trial of this case that there is no specific finding by the [Georgia] jury as to the ownership.

What we are endeavoring to have this court do is to guess or second guess or third guess what the [Georgia] jury based its findings upon. That is something that this court is not going to take into consideration.

* * *

There is no specific finding by a jury[.]"

On August 12, 1988, the trial court granted defendants' section 2—1110 motion, finding that "the evidence was overwhelmingly in favor of the defendant at the close of the plaintiff's case." On August 30, 1988, the trial court issued a memorandum opinion and order. Subsequently, the plaintiff sought clarification as to the finality of that order.

On September 1, 1988, defendants filed a motion for costs and fees pursuant to the original version of section 2—611 (Ill. Rev. Stat. 1983, ch. 110, par. 2—611) on the grounds that, after almost eight years of discovery, plaintiff had failed to prove a *prima facie* case for ownership of defendant Lunt's stock at trial. Defendants also moved for sanctions under the 1986 revised version of section 2—611 (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) based on the fact that the motion for summary judgment filed on the first day of trial was not well-grounded in fact or warranted by existing law. Defendants asked to recover as a sanction "the full amount of the expenses they have incurred in this case." Defendants' initial request was for actual attorney fees and costs totalling $336,673.15.

Plaintiff filed pleadings in opposition to defendants' motion. Their pleadings alleged that defendants had failed to meet their burden of proving that either version of section 2—611 was applicable. Plaintiff alleged that the motion for summary judgment was presented to the court "after reasonable inquiry and with the belief that the motions were well founded in fact and warranted by existing law." Plaintiff further contended that defendants had failed to prove that the complaint, or any pleading filed before the 1986 version of section 2—611 became effective, was "untrue and made without reasonable cause." Plaintiff's opposition to defendants' motion did not contest or address in any way defendants' claim that $336,673.15 was the appropriate amount to be awarded as a sanction.

On May 22, 1989, the trial court issued a memorandum opinion and order granting defendants' motion for sanctions. The court held, first, that plaintiff's filing of its motion for summary judgment based on *res judicata* and collateral estoppel violated the 1986 version of section 2—611, stating:

"[P]laintiff's counsel signed this motion even though the transcript from the Georgia case had not yet been received or reviewed, and further represented to this court that an 'actual finding' had been made in the Georgia case, when that was proven to be false. Therefore, plaintiff's counsel should not have represented to this court that an actual finding had been made until a review of the Georgia record confirmed that such statements were well grounded in fact.

The record of the Georgia case contained a transcript of the jury verdict. The transcript clearly showed that the jury made no specific finding on the issue of ownership of Lunt Manufacturing Company. That 1980 transcript should have put the

plaintiff on notice that no definite jury finding on the ownership of Lunt was made in the Georgia case.

In conclusion, the plaintiff's filing of its motion for summary judgment on November 9, 1987, and its subsequent reliance on the doctrines of *res judicata* and collateral estoppel in the presentation of its case in chief violated new Section 2—611."

The court held that sanctions for this violation would be assessed against both plaintiff and its counsel in a sum to be determined that would "include reasonable attorneys fees and costs incurred from November 9, 1987, the date that the plaintiff's motion for summary judgment was filed—through February 23, 1989, the date that counsel for the plaintiff and defendants orally argued the defendant's section 2—611 motion."

The court also held that plaintiff's original complaint, filed in 1980, violated the retroactive original version of section 2—611:

"This court, in entering judgment for the defendants, found each allegations [*sic*] to be made without reasonable cause and to be untrue ***.

In conclusion, defendant had to spend almost eight years defending this lawsuit based upon untrue allegations in the plaintiff's complaint. Accordingly, the defendants will be awarded costs, including attorneys' fees from the plaintiff Bosch Die Casting Co., Inc."

The court concluded by stating, "The defendants['] motion for sanctions pursuant to Ill. Rev. Stat. ch. 110, par. 2—611 is granted." The court set a hearing for July 11, 1989, to determine the amount of sanctions to be assessed against the plaintiff under old section 2—611 as well as the amount of sanctions to be assessed against Bosch's counsel under new section 2—611.

On July 26, 1989, the hearing on the motion for sanctions was continued to August 28, 1989. On August 24, 1989, the additional appearance of Benjamin P. Hyink was filed on behalf of Bosch.

On August 28, 1989, new counsel for plaintiff filed an "Emergency Motion to Continue Hearing on Defendants' Motion for Costs and Fees." In the motion, counsel stated that they had not had "an opportunity to complete discovery or to otherwise properly prepare for a hearing." On that date, plaintiff also filed its first "Notice to Produce Pursuant to Rule 237 of the Illinois Supreme Court," requesting documents and production of an adverse witness at the scheduled hearing. After hearing argument on plaintiff's motion, the trial court ordered the evidentiary hearing to proceed as scheduled.

On August 28, 1989, the hearing on the motion for fees and costs commenced with the testimony of George A. Joseph, counsel for defendants, and the introduction into evidence of group exhibit No. 2 consisting of 288 pages of cancelled checks for fees paid to defendants' counsel and the bills that had been submitted to the defendants. Defendants objected to producing a copy of exhibit 3 to plaintiff's counsel in unredacted form, due to the pendency of the appeal in case No. 1—88—2904. Defendants felt that the work description in exhibit 3 included summaries of research projects undertaken and other mental impressions that constituted privileged work product. Defendants' counsel, members of the firm of Kirkland & Ellis, also objected to having their billing rate information included in the public record of the case. Defendants' counsel submitted that they could present a schedule of time, eliminating the matters that they felt were privileged, within 48 hours. Plaintiff's counsel stated that if there was to be produced a redacted copy of these documents, he had a right to see that portion which was blocked out and also to request an *in camera* hearing for the court as a third party to review the records. The trial court ruled that plaintiff's counsel could see a partially redacted exhibit 3A which included billing rate information, but counsel could not show the redacted exhibit 3A to his client or any other party. Cross-examination on billing rates and certain other alleged work product information could only be conducted *in camera* outside the presence of Bosch's president and any other persons other than counsel for the parties.

Mr. Joseph testified that the case had been in litigation for 8 years and 11 months, approximately 241 documents had been filed with the trial court and at least 10 depositions had been taken. When Mr. Joseph was tendered to the plaintiff for cross-examination, plaintiff's counsel requested a continuance in order to give him time to prepare for cross-examination by examining the documents he had requested defendants to produce the day of the hearing. The hearing was continued to September 5, 1989, at which time counsel for Bosch was directed to commence cross-examination of Mr. Joseph.

On September 1, 1989, defendants produced to plaintiff a version of defendants' exhibit 3 with between 40 and 50 entries redacted on the basis of privilege. Exhibit 3 consists of 257 computer-generated pages listing billing information. Exhibit 3 was a month-by-month and day-by-day listing of each attorney or other employee who worked on the case, a description of the work done each day, the number of hours spent on the case that day, the hourly rate charged and the amount charged for that person's time for that day. Exhibit 3 also

listed every expenditure and cost item and the amount by date. The printout produced to plaintiff had all of Kirkland & Ellis' billing rate information available.

On September 5, 1989, the court proceedings commenced with argument between counsel as to whether exhibit 3 would be redacted before counsel was permitted to inquire in the public proceedings concerning certain alleged work product information and certain alleged proprietary information about billing rates. At the beginning of the hearing, Mr. Joseph stated:

"[A]s the court ruled, if your Honor believes that there is any conflict over some of the matters and there are about 40 or 50 entries over nine years where we have marked something out as confidential, as your Honor said last week, if you determine that the thing is privileged and counsel should not see it, we will not if you determine that it's privileged. But he should see it for the limited purpose of this motion, fees and costs. He can see it and he can cross-examine me on it. But at that point, it would be an *in camera*, and we would have anybody not connected with the case leave the courtroom."

The plaintiff's president was then asked to leave the courtroom for the hearing. After agreeing to keep any information heard confidential, Mr. Hyink's law clerk was permitted to remain in the courtroom during the hearing.

The court ordered the court reporter to keep the transcript under seal until further order of court. During the *in camera* session, the trial court ruled upon each item defendants' counsel sought to be redacted and kept from the sight of plaintiff's counsel. The court ordered some of the entries to be disclosed and allowed others to remain confidential.

The proceedings were once again made public and Mr. Joseph's testimony continued. Mr. Joseph explained the manner in which the computer printouts were prepared. Thereafter, exhibit 3 was received into evidence over the objection of plaintiff's counsel.

The proceedings recommenced on October 18, 1989. Plaintiff's former counsel were granted leave to withdraw their appearance. Mr. Joseph was granted leave to file an affidavit setting forth certain charges to be withdrawn from defendants' claim. These charges totaled $1,460.90.

Bosch's counsel argued that Illinois law placed a burden upon the defendants to present substantial detailed evidence in support of their case, and that the redacted information constituted an impairment of

plaintiff's ability to defend the hearing for attorney fees and costs. Defendants' counsel responded by stating:

> "Your Honor, I think the answer to that is that no one ever intended to prevent Mr. Hyink from cross-examining me or anyone else in my case with respect to privileged matter.
>
> The deal was and it was clear the last time, we simply don't want these documents to be in the public and not to be shared with Mr. Hyink's client. No one is trying to limit cross examination whatsoever."

During cross-examination, Mr. Joseph testified that several entries in exhibit 3A included charges for attorney fees and costs which predated the filing of the complaint on September 19, 1980. Regarding photocopying charges, Mr. Joseph testified that for the last four or five years the Kirkland & Ellis firm had an automatic billing system for photocopying charges. Prior to the automatic billing system, the clerical staff maintained a written record of photocopying charges. Mr. Joseph believed that the white slips of paper that were used and filled out by people to record photocopy expenses prior to the computer system had been discarded. Photocopying charges totaling approximately $9,929 were included in defendants' claim for costs.

Plaintiff did not make any requests to have any experts testify; in fact, plaintiff did not call any witnesses to contradict or rebut defendants' case.

The court heard closing arguments on November 27, 1989. Plaintiff's counsel again argued that the redactions from the public record had interfered with his ability to cross-examine Mr. Joseph. The following colloquy took place:

> "MR. HYINK: With respect to the comment that the deal was such and such, I want to make it clear on the record that we did not agree to the redaction of material. There was a motion presented to the Court. There was a request made to redact.
>
> THE COURT: I ruled that way.
>
> MR. HYINK: Your Honor ruled, and we understood that ruling to be the law of this case and that we—all of our actions were confined to operate within your Honor's ruling.
>
> THE COURT: And it did not restrict you to cross examine this witness, and you can't tell me it does.
>
> MR. HYINK: Well—.
>
> THE COURT: You saw fit not to, and you're trying to change the story, and I don't approve of that, Mr. Hyink."

On February 7, 1990, the trial court entered judgment in the sum of $382,842.96 as the amount assessed under section 2—611 of the Illinois Code of Civil Procedure in total fees and costs awarded to defendants. The trial court attached to its memorandum opinion an extensive document prepared by defendants' counsel after trial was completed which set forth various time summary sheets stating the name of the attorney or legal assistant, rate, hours and total sum billed as well as a summary of yearly costs incurred. Subsequently, the trial court denied Bosch's motion to modify or clarify judgment in the matter. This timely appeal followed.

The issues in this appeal all relate to the adequacy of the hearing granting fees and costs. No issue is raised as to the propriety of the trial court's decision to award sanctions. Specifically, Bosch presents the following issues for review:

(1) Whether the trial judgment for attorney fees, clerk fees and costs was against the manifest weight of the evidence and constituted an abuse of the circuit court's discretion;

(2) whether the circuit court abused its discretion by entering a judgment against plaintiff for unsupported costs contrary to the manifest weight of the evidence;

(3) whether the circuit court abused its discretion by entering a judgment for attorney fees and costs incurred prior to the filing of plaintiff's complaint or incurred after entry of the court's order of August 30, 1988, clarifying the final judgment of August 2, 1988; and

(4) whether the trial court violated the plaintiff's procedural due process rights by barring plaintiff's counsel from disclosing to any other party the attorney fee hourly rates and clerk hourly rates billed by defendants' counsel to any other party, including plaintiff and any potential expert witness.

For the following reasons, we affirm in part and reverse in part.

I

Bosch first argues that the trial court abused its discretion by entering judgment for attorney fees, clerk fees and costs. Bosch argues that defendants' counsel presented no evidence concerning their hourly billing rate, except during an *in camera* proceeding from which the plaintiff and the public were excluded. Bosch contends that this information was redacted from exhibit 3 and no examination or cross-examination of this issue was permitted during the contested hearing except *in camera*. Additionally, Bosch claims that: no expert for plaintiff could review the hourly rates billed; no expert testimony was presented by defendants concerning the usual and customary

charges for comparable service performed between 1980 and 1988 in Cook County, Illinois; and the evidence presented by the defendants during trial did not differentiate fees billed by attorneys and fees billed by nonattorneys. Finally, with the exception of George A. Joseph, no evidence was ever presented concerning the skill and standing of other attorneys who billed the defendants for services in this case. Bosch concludes this argument stating, "The records presented by Defendants are similar to the time records submitted in the *Kaiser* case [(*Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424)] and accordingly, the Court should deny Defendants' motion in so far as it seeks an award of fees unsupported by adequate information."

In *Fried v. Barad* (1989), 187 Ill. App. 3d 1024, 1027-28, 543 N.E.2d 1018, this court affirmed an award of costs and fees pursuant to section 2—611, finding that a time summary that showed the identity of the attorney providing the service, the time and rate charged and some specifics as to each entry was sufficient to support an award of fees. The court relied on *Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.* (1987), 155 Ill. App. 3d 427, 508 N.E.2d 331, where the defendant complained that the time records of the plaintiff were too vague. (*Fried,* 187 Ill. App. 3d at 1028.) The *Embassy* court acknowledged that the plaintiff's attorney submitted generalized time summaries, but recognized that most attorneys do not keep separate time sheets detailing which hours spent were directly caused by untrue pleadings and determined that it would be ludicrous to expect them to do so. The *Embassy* court further held that the opposing party did not clearly show that the circuit court abused its discretion in awarding fees. (*Embassy,* 155 Ill. App. 3d at 435.) The *Fried* court specifically distinguished the opinion in *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424, stating:

> "In that case, where no hearing was held, the time summary and client billing was provided to the court without dates, without the subject matter of the work, and without identifying the attorney who performed the work. [Citation.] In the case at bar, where a hearing with full cross-examination occurred, the petition differed substantially from that in *Kaiser*." (*Fried,* 187 Ill. App. 3d at 1028.)

In addition, we note, *Kaiser* involved a provision in a contract for the award of attorney fees, rather than an award of fees as sanctions pursuant to section 2—611.

In its memorandum opinion of February 7, 1990, the trial court stated:

"Testimony was introduced as to the time expended on these proceedings with reference to whether or not the plaintiff, Bosch Die Casting, Inc., owned two-thirds of Lunt Manufacturing Company, the time expended by the attorneys for the defendant Lunt Manufacturing, and the fees incurred and paid to the attorneys for Lunt by said defendants.

George Joseph, attorney for defendant Lunt, testified at great length, produced documentary evidence as to the time expended from the records of his law firm, Kirkland & Ellis, explained the entire procedure and methodology for billing of the time expended, and the records of costs expended even though the Plaintiff had approximately ten sets of lawyers and law firms throughout the proceeding.

In *Embassy v. Main Auto Leasing*, 155 Ill. App. 3d 427, 508 N.E.2d 331 (1987) the Court stated that a lawyer does not need to keep detailed records of his costs and fees in order to recover under Section 2—611. Yet during the evidentiary hearing in this case, Mr. Joseph produced in open court the bills sent to the defendants, the defendants['] checks paying those bills and all the Kirkland and Ellis time sheets showing all of the individualized items for fees and expenses laying out exactly what work was done by whom, for how long of a time, at what hourly rate and the amount, and on the costs laying out exactly what the cost was, the date of each of the items, the cost and the nature of the costs.

The plaintiffs were given the opportunity to cross examine George Joseph on all matters at issue here and to examine records including records that were alleged to be privileged. When the Court offered to have an *in camera* inspection and gave Benjamin Hyink, the plaintiff's last and new attorney an opportunity to examine those records in detail, attorney Hyink refused.

An *in camera* inspection was set for September 5, 1989 at 2:00 P.M. to give Hyink an opportunity to discuss this with the defendant's attorney, Mr. Joseph, and that was then continued to September 7, 1989 at 2:00 p.m. Mr. Joseph produced records from May 6, 1980 through February 3, 1989 as a group exhibit approximately one and one half inches thick.

Attorney Hyink for the plaintiff did not take advantage of the opportunity afforded him to cross-examine Mr. Joseph on the documents comprising this exhibit. The plaintiff's attorney was also given the opportunity to present its defense to the

claim for fees and costs incurred herein, by Hyink, the attorney for the plaintiff refused to proceed thereon.

This proceeding involved a claim for fees and costs involving eight and one-half years of work and approximately 2475 billable hours of time by the law firm of Kirkland & Ellis, which represented the defendant Lunt Manufacturing Co. This case also involved approximately 240 pleadings and approximately 10 depositions.

Mr. George Joseph graduated cum laude from Boston University Law School in 1976 after serving on the law review. After clerking for a Judge approximately one year, Mr. Joseph joined the law firm of Kirkland & Ellis in 1978. He became a partner in that law firm in 1985.

Mr. Joseph has been the principal attorney for the defendant in *Bosch v. Lunt* since the inception of this case in 1980. However, the work involved in this complex case not only included the services of George Joseph but other corporate attorneys, summer associates, and various members and employees of the firm of Kirkland & Ellis. Mr. Joseph supervised all of the work done by others in his firm on this case and testified in this Court that all of the work completed was reasonable and necessary to resolve this complicated case.

\* \* \*

The defendants['] exhibit 3A, the reduced hourly rates, billable hours and total number of *fees* charged by each Kirkland and Ellis partner, associate, summer associate, legal assistant, library research assistant, project assistant and clerical assistant who contributed to this case over its eight and one half year period are set forth as follows in chart form. The hours, hourly rates and dollar amounts charged which appear in the following charts were compiled from Exhibit 3A, a computer printout, which Mr. Joseph testified from during the Section 2—611 hearing."

The court concluded the memorandum by stating, "This Court finds that all of the work completed by Kirkland and Ellis was reasonable and necessary to resolve this case."

■ Plaintiff makes general conclusory statements that the fees were unreasonable but fails to point to any specific instances of unreasonableness. Plaintiff does not specify the amount that should have been denied as insufficiently substantiated, nor does plaintiff suggest what it considers a reasonable award to be. Nothing in the record discloses that the trial court precluded plaintiff's counsel from cross-ex-

amination on the issue of the reasonableness of hourly rates of Kirkland & Ellis. Moreover, at no time did plaintiff's counsel request any cross-examination on the issue of the hourly rates charged by Kirkland & Ellis.

Bosch also argues that the defendants failed to present testimony as to the skill and standing of the other attorneys who billed hours in this case. Mr. Joseph testified that he billed over 2,000 of the 2,475 hours billed to the client and that he personally supervised the work of the other attorneys on the case. He specified that when possible he gave work to associates and summer associates because it was cost-efficient due to their lower billing rate. There was also testimony indicating that at least one entry was made by a partner who was a tax attorney, when a tax question arose. Counsel for plaintiff had documents which provided the name of each attorney and employee of Kirkland & Ellis who billed any time in this case and their respective billing rates. Counsel for plaintiff never made any requests for further information regarding any of these individuals. In fact, plaintiff's counsel never made a request to bring in an expert to contradict the reasonableness of any of the hourly charges of any of the attorneys at Kirkland & Ellis, including Mr. Joseph. We feel that the combination of Mr. Joseph's testimony as the primary attorney on the case and the supporting documents were adequate to support the reasonableness of the fees awarded.

Plaintiff's counsel suggests that defendants were required to present expert testimony concerning the usual, customary charges for legal services in Cook County from 1980 to 1988. We disagree. This court has stated, "In assigning a value for legal services rendered, the courts may use the knowledge they have acquired in the discharge of professional duties." (*In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 113, 559 N.E.2d 819.) Thus, we find that additional testimony regarding customary rates for the relevant time periods was not required. Moreover, plaintiff's counsel never presented any evidence to the contrary.

The amount of fees to be awarded pursuant to section 2—611 is a decision within the sound discretion of the trial court. (*Prudential Property & Casualty Insurance Co. v. Dickerson* (1990), 202 Ill. App. 3d 180, 187, 559 N.E.2d 854.) Absent a clear abuse of discretion, a decision to award fees and expenses and a decision as to the amount assessed will not be disturbed. (*Fried v. Barad* (1989), 187 Ill. App. 3d 1024, 1027, 543 N.E.2d 1018.) "Ordinarily a trial court's decision is not disturbed on review." (*Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.* (1987), 155 Ill. App. 3d 427, 434, 508 N.E.2d

331.) The trial judge was the same judge who heard the case throughout the years of litigation. He made thorough findings on the issue of fees. We cannot find that the trial court abused its discretion in finding that the amount of the attorney fees was reasonable.

## II

■ The second issue raised by Bosch is that the trial court abused its discretion in entering a judgment against the plaintiff for unsupported costs contrary to the manifest weight of the evidence. Bosch contends that duplicating charges totaling $9,903.95 should not be awarded to the defendants as there is no description of what was photocopied and for what purpose the duplicating charges were incurred. In addition to this sum, Bosch contends that additional costs totaling $15,641.38 for telephone, secretarial overtime, overtime meals and transportation, postage, computerized research, messenger services and other expert fees and miscellaneous costs should be subtracted from any award given to the defendants.

Defendants argue that all of the charges challenged by plaintiff were itemized in exhibit 3 and listed by date and amount. Additionally, defendants argue that while actual invoices for these charges, dating back to 1980, in most cases no longer exist, the evidence was uncontroverted that these charges were incurred and paid. Defendants maintain that Mr. Joseph testified that these expenditures were reasonable and necessary to the preparation of this case, and that since he was available for cross-examination on all of the expenses, defendants fulfilled any obligation to "connect" these charges to services performed.

We agree with plaintiff's argument and reduce the award of costs by $25,545.33.

The fact that Mr. Joseph was available for cross-examination on these charges does not connect them to the services performed, nor does it take the place of direct testimony. This differs from the award of attorney fees where a detailed description of the services was included for each entry, Mr. Joseph described generally the types of matters that were handled and he was available for cross-examination.

No evidence was presented as to what any of the photocopying charges related to. The entries indicated a date, "DUPLICATING CHARGE" and the amount billed. No evidence was presented to relate any of the charges to work performed, or to any specific documents or pleadings.

Secretarial overtime included the name of the secretary, the date, and the amount billed. Again there was no description of any type of work performed. We find the same arguments apply to postage charges, telephone charges, messenger charges and Lexis charges. Additionally, we find no justification to award the defendants the costs of overtime dinners and cabfare.

### III

■ Bosch argues that the trial court abused its discretion by entering a judgment for attorney fees and costs incurred prior to the filing of plaintiff's complaint or incurred after the entry of the trial court's order of August 30, 1988, clarifying the final judgment of August 2, 1988.

The trial court noted in its memorandum opinion of May 1989 that the pending motion was governed by the 1982 and 1986 versions of section 2—611 of the Code of Civil Procedure. In the 1982 version of section 2—611, a party's recovery was limited to reasonable expenses, including reasonable attorney fees, actually incurred by reason of the untrue pleading. (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.) The revised section 2—611 provided for sanctions for the filing of untrue pleadings upon motion or upon the initiative of the court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Revised section 2—611 also provided for sanctions against counsel who sign a pleading, as well as the party represented. The revised section 2—611 limited recovery to "the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

Defendants' exhibit 3A discloses that attorney fees in the sum of $4,300 and costs in the sum of $145.47 were incurred prior to the date Bosch filed its complaint. These costs could not have been incurred because of the filing of an untrue pleading. We find that the trial court erred in awarding fees and costs incurred prior to the filing of the lawsuit. Accordingly, we reduce the amount of fees awarded to defendants by $4,300 and we reduce the amount of costs awarded to defendants by $145.47.

Defendants acknowledge this court's decision in *G.M. Sloan Mosaic & Tile Co. v. Newman/Lustig & Associates* (1990), 199 Ill. App. 3d 518, 557 N.E.2d 403, which held that the version of section 2—611 that was in effect at the time that plaintiff filed its false complaint did not authorize expenses incurred prior to the filing of the untrue pleading. However, defendants argue that the court nonetheless had the discretion to award these amounts as a punishment. Defendants fur-

ther argue that the trial court's decision awarding these fees and costs was decided before this court's decision in *G.M. Sloan Mosaic & Tile* and since that case announced a new application of law, it should not be applied retroactively.

We do not accept defendants' argument; *G.M Sloan Mosaic & Tile* merely interpreted the version of section 2—611 that was in effect at the time that plaintiff filed its false complaint. In addition, we find no support in the record that the fees incurred prior to the filing of the complaint were awarded as a punishment of any sort.

A final judgment was entered in this case on August 2, 1988. Bosch argues that no other fees or costs were necessarily incurred by the defendants due to the filing of plaintiff's complaint after August 2, 1988. Bosch claims that, accordingly, attorney fees and costs, in the sums of $25,333.25 and $1,454.50, respectively, should be denied to the defendants.

This court has repeatedly held that a trial court may properly award fees incurred in the prosecution of a section 2—611 petition. (*Embassy/Main Auto Leasing Co.*, 155 Ill. App. 3d at 435 (held 100% of plaintiff's fees and expenses, after the judgment date, for its prosecution of the section 2—611 petition was proper); *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 26-28, 466 N.E.2d 945.) In light of the previous holdings by this court, we cannot find that the trial court abused its discretion in awarding fees and expenses incurred through February 23, 1989.

IV

On September 5, 1989, upon the request of defendants' counsel, the trial court entered a ruling that all information concerning the billing rates charged by defendants' counsel to defendants would remain confidential and could only be raised in an *in camera* proceeding. Bosch alleges that its counsel was not permitted to share this information with a potential expert witness to rebut defendants' assertion that the billing rates were customary and reasonable in Cook County for the tasks performed in this case. Although Bosch's counsel was not permitted to share this information publicly, the trial court included all billing rate information in detail as part of its final judgment.

Bosch argues that, in this case, the plaintiff was not afforded a reasonable opportunity to rebut the defendants' claim that the billing rates for attorneys and clerks were reasonable because such information was not made public until the opinion was published. Bosch claims that "[s]uch an unfair withholding of essential information vio-

lates a fundamental prerequisite of procedural due process that every party shall have the benefit of an orderly proceeding according to the general law and established rules in that a trial shall not be arbitrary, but that a party shall have an opportunity to be heard in defense and be assured of inquiry on issues of a case wherein judgment is rendered only after trial." Bosch cites *Pettigrew v. National Accounts Systems, Inc.* (1966), 67 Ill. App. 2d 344, 213 N.E.2d 778, and *Clements v. Schless Construction Co.* (1968), 91 Ill. App. 2d 19, 234 N.E.2d 578, 580, in support of its argument.

In *Clements v. Schless Construction Co.* (1968), 91 Ill. App. 2d 19, 234 N.E.2d 578, there was a single trial in which there was a party plaintiff and a party defendant, and a third party who was not a party to the case being tried. Counsel for the third party participated in the selection of the jury, the examination of witnesses, objected to evidence offered by the plaintiff, participated in conferences on instructions, as well as objected to plaintiff's argument. The court held that the third party was a stranger and should not have been permitted to participate in the trial.

In *Pettigrew v. National Accounts System, Inc.* (1966), 67 Ill. App. 2d 344, 213 N.E.2d 778, Pettigrew, called into court on a motion for a temporary injunction, was directed by the court to proceed on the merits of his suit for a declaratory judgment, filed only 11 days before, and to proceed in defense of the suit against him for damages in the sum of $50,000, and for a permanent injunction which had been on file only seven days. At that time, no answer had been filed to the complaint and no pleading had been filed by Pettigrew to the suit against him. The court held that "[t]he action of the trial court in compelling the litigants to proceed on the merits of the case, at a time when both parties asserted they were before the court only on a motion for temporary injunction, without permitting them to plead in the manner prescribed by the Civil Practice Act and Rules of Court, and in denying them the opportunity to prepare and present their case fairly and fully, was a denial of due process." *Pettigrew*, 67 Ill. App. 2d at 352.

First, both *Clements* and *Pettigrew* are clearly factually distinguishable from the case at bar. Second, as stated previously in this opinion, we do not find that the plaintiff was deprived of the right to cross-examine the defendants' counsel regarding their billing rates. The trial court never made any ruling prohibiting cross-examination regarding billing rates and moreover plaintiff's counsel never attempted any cross-examination regarding billing rates. Further, plaintiff's counsel never even attempted to present evidence concerning

the customary billing rates in Cook County during the time of the litigation.

Since plaintiff's counsel had the right to cross-examine the defendants regarding billing information, albeit without plaintiff's president present, we cannot find that plaintiff's due process rights were violated. However, we note while we do not condone the trial court's decision to keep the billing information confidential, we do not feel it reversible error.

Accordingly, for all the reasons set forth above, we affirm in part and reverse the award of $4,300 in attorney fees and $145.47 in costs incurred prior to the filing of the complaint and unsupported costs in the amount of $25,545.33.

Affirmed in part and reversed in part.

McNULTY, P.J., and LORENZ, J., concur.