## UNION TRUST COMPANY OF MARYLAND v. HARRISONS' NURSERIES, INC.

[No. 20, April Term, 1942.]

652

*Decided June 17, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Walter H. Buck* and *Eben F. Perkins* for the appellant.

*Edmond H. Johnson,* with whom was *William H. Scott* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

By indenture dated December 2, 1929, Harrisons' Nurseries, Inc., the appellee, owning large orchards and nurseries in Worcester County, made and executed, to the Union Trust Company of Maryland, trustee, a deed of trust of its said property to secure an issue of $200,000 of 6 per cent. first mortgage bonds, being 200 of the denomination of $1,000 each, payable December 1, 1944. November 28, 1940, the trustee filed a bill alleging that the appellee was in default in the payment of interest on the bonds and taxes for three years, that the entire issue was outstanding and unpaid, and prayed the appointment of a receiver for the property pending a foreclosure of the deed of trust. The appellee by its answer admitted the facts contained in the bill for receiver, and submitted its rights to the court, which, thereupon, on November 28, 1940, appointed Horace Davis as receiver.

September 27, 1941, the Union Trust Company, trustee, filed a petition for the foreclosure of the deed of trust, and this is what stirred up this controversy. The trustee had alleged that the entire indebtedness of $200,000 was in default. The Exchange and Savings Bank of Berlin, Maryland, intervened, praying to be made a party defendant, and an order was passed permitting it so to do, and it then filed an answer, in which it alleged that the total mortgage indebtedness was not $200,000, but $119,000. The answer stated, and is borne out by the evidence, that at the time of the execution of the deed of trust the appellee was indebted to its creditors in the sum of $92,000, of which it owed the appellant about $36,000.

When the deed of trust was executed, and the bonds signed, they were in the possession of the trustee, The appellee then gave a check of $200,000 to the trust company, but no money passed, but the bonds were then in the possession of the trust company, subject to the order of the appellee to be distributed to the creditors of the appellee in payment of or as security for its debts, which

then amounted to $92,000. Of this amount the appellee owed the trust company $35,900, to which it deposited bonds of the par value of $36,000 as collateral security for its 90-day note, which has never been paid. Shortly after the execution of the mortgage the appellee sold bonds of the amount of $27,000, making the bonds then issued and outstanding $119,000, the balance being held by the trust company, in its corporate capacity, under the authority of a letter of the same date as the deed of trust, December 2, 1929, from Harrisons' Nurseries, Inc., which said, "as trustee under our issue First Mortgage 6% Gold Bonds, totaling $200,000, we request that you certify all of the above bonds and deliver the same to the Union Trust Company of Maryland, subject to our further instructions."

Sometime in the spring of 1931, the trust company, without any authorization of the mortgagor, advised it that it (the trust company) had taken or appropriated $20,000 of the bonds theretofore unissued as additional collateral to the note of $35,900. The record does not show exactly when this was done, and does not contain the letter so advising the appellee, but there is a statement of the president, G. Hale Harrison, that it was in the spring of 1931. This left $61,000 of the bonds in the possession of the trust company "for safekeeping," and on September 24, 1931, it wrote Mr. Harrison as president of the appellee:

"We have today transferred $61,000.00 Harrisons' Nurseries, Inc. bonds from our Safe Keeping Department to our Loan Department, to be used as additional security against your loan.

"Trusting our action meets with your approval, we are, with kindest regards,

"Yours very truly,

"C. Roland Mays,

"Assistant Treasurer."

These transactions left $117,000 of the bonds in the hands of the trust company as collateral security for a

note of $35,900. In 1935 and in 1937 the bondholders granted extensions on the mortgage debt to the appellee, and additional loans were made by the trust company, with "no collateral," as Mr. Harrison testified, in a total of about $25,000 or $30,000, we cannot tell from the record exactly what amount, but that can be easily ascertained.

The chancellor decreed that the amount of bonds outstanding is $119,000, which means that the trust company is entitled to the distribution of the proceeds of sale as a mortgagee on $36,000, but as to the excess of its loans over that amount, it is a common creditor. The appellant's contention is that it is entitled to the distribution on $117,000, to the extent of its loans, which aggregate something more than $60,000. The appellee's contention is that this would be inequitable, would be unfair and a fraud upon the other bondholders, most of whom exchanged the company's obligations for bonds at par. Among them the Exchange and Savings Bank of Berlin, which is the real appellee in this case.

There can be no doubt that the advances or loans made by the trust company, as a banker, were made on the strength of the bonds, over and above the original collateral of $36,000, which it had appropriated as additional security for the loan of $35,900, and that the Harrisons' Nurseries so understood. The only question in our minds is whether the trust company is entitled to all of its excess of bonds in its hands, over $36,000, or such amount as would be fair and reasonable security under the circumstances for the additional amount advanced.

The appellant as trustee is not concerned in the decision of this case; its duty is to execute the deed of trust, and to make distribution of the proceeds of sale under the direction of the court. We are only concerned with the banking department, and its conduct. Even if this appellant is chartered as a trust company, it is authorized by law to engage in the banking business, and it is as a banker that it is here interested.

The chancellor, in his opinion, cited 65 *C. J., Trusts,* 652, Sec. 520, which is so applicable that we quote it at some length: "In administering the trust, the trustee must act for the beneficiaries, and not for himself in antagonism to the interests of the beneficiaries; he is prohibited from using the advantage of his position to gain any benefit for himself at the expense of his *cestuis que trustent,* and from placing himself in any position where his self-interest will, or may, conflict with his duties as trustee, as a trustee is required to protect at all hazards, even to his own personal loss and disadvantage, the estate under his administration where his personal and individual interests conflict with those of the trust estate." To the same effect the opinion by Judge Digges in *Mangels v. Tippett,* 167 Md. 290, 173 A. 191, is an elaborate and exhaustive discussion of the subject.

The trust company, as a banker, occupied in this case, toward the appellee and its bondholders, a position of trust and confidence. It was not given control of the unissued and unsold bonds, which it held "for safe-keeping, subject to * * * further instructions" of the mortgagor. As to the unissued eighty-one bonds, it had appropriated them within two years of the execution of the mortgage and when it did so, it reduced the security of the other bondholders about 50 per cent.; it knew then that nearly all of them had taken bonds at par in payment of the obligations of the appellee at the time held by them. The trust company was the only creditor in a position to protect itself against the sale or issuance of the bonds at a depreciated price.

In our opinion the decree appealed from should be so amended as to declare that the amount of bonds issued and outstanding is not $119,000, but that amount plus such additional bonds as represent the amount of moneys as was loaned or advanced by the trust company after the loan of December 2, 1929. See *Kemp v. Kemp,* 178 Md. 645, 655, 16 A. 2d 888.

The record contains, by stipulation, a copy of a collateral note dated November 4, 1934, at three months,

signed by Harrison Nurseries, Inc., by its president and its treasurer, for $35,864.54, which says there was deposited as security for it "$117,000.00 Harrisons' Nurseries Inc. 6% Gold Bonds," and which had been filed in the Circuit Court for Worcester County as a claim against the mortgagor. Since the argument in the case the appellee has filed a supplemental brief, which says the note was not offered in evidence at the hearing, should not have been included in the record, and was not considered by the chancellor. The appellant relies that even if not included, it was admitted on the witness stand by G. Hale Harrison, president of the appellee, that $117,-000 was held as collateral to the note for $35,900. He said "according to the records, 117" were held by the trust company, and that the appellee is now estopped to dispute the deposit of the additional collateral. That may be true, though we do not so decide, but the other bondholders are not estopped.

The note of November 4, 1934, is not in the record, and not having been put in evidence at the hearing, cannot be now brought in by agreement. On appeal this court can only review the record before the circuit court. Aside from being improper it would be unfair to the court below. Code, 1939, Art. 5, Sec. 10; *Bower & Kaufman v. Bothwell*, 152 Md. 392, 397, 136 A. 892, 52 *A. L. R.* 158. But in or out the case as actually heard and decided does not depend on the collateral note. If this were a contest between the nursery and the trust company it might be important and decisive of the case. But this is a controversy between creditors, which in our opinion is unaffected by the collateral not in the record, even though it could have been included.

For the reasons assigned the decree must be remanded for another to conform with this opinion.

> *Decree reversed and case remanded for further proceedings and passage of a decree to conform with this opinion, the costs to be paid out of the proceeds of the mortgagee's sale.*