608 A.2d 1301

**REPUBLIC INSURANCE COMPANY**

v.

**PRINCE GEORGE'S COUNTY, MARYLAND.**

**No. 1704, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

July 9, 1992.

James R. Schraf (Victor I. Weiner and Lipshultz and Hone, Chartered, on the brief), Silver Spring, for appellant.

Crystal R. Dixon, Associate Co. Atty. (Michael P. Whalen, Co. Atty., Michael O. Connaughton, Deputy Co. Atty. and J. Michael Dougherty, Jr., Associate Co. Atty. on the brief), Upper Marlboro, for appellee, Prince George's County.

Angelo I. Castelli, Greenbelt, for appellees, Tantallon XI, Inc., William and Jane Martin and John and Patricia Smart.

Argued before WENNER, FISCHER and HARRELL, JJ.

HARRELL, Judge.

On 19 August 1988, Prince George's County, Maryland (County) filed an action in the Circuit Court for Prince George's County against Republic Insurance Company (Republic), seeking recovery under a performance bond issued

by Republic. Republic issued the bond to secure a road construction permit on behalf of Tantallon, XI, Inc. (Tantallon), which ultimately defaulted on its obligations under the permit. Republic answered and filed a third-party complaint against William Martin, Jane Martin, John Smart and Patricia Smart (the indemnitors), claiming indemnity against liability.[1] Republic later added Tantallon as a third-party defendant. Following a jury trial (Platt, J. presiding), the circuit court denied Republic's motions for judgment and judgment N.O.V. and entered judgment on the jury's verdicts in favor of the County in the amount of $59,861.00 and in favor of Republic in the amount of $27,666.00. The court denied the County's request for prejudgment interest. Republic noted a timely appeal, and the County cross-appealed.

On appeal, Republic asserts that the amount of damages recoverable by the County on the bond must be measured as of 16 June 1988, the date, as stipulated by the parties, of Tantallon's default on its obligations under the permit. Republic also asserts that the liability of the indemnitors must be coextensive with its own liability under the bond. The County, in its cross-appeal, contends that the circuit court abused its discretion in denying its request for prejudgment interest. For reasons we shall explain, we affirm the judgments below.

## Facts

On 29 August 1978, Tantallon filed an "Application For Construction Within A Public Right-Of-Way" with the County Department of Public Works and Transportation, seeking a permit for street construction on Hallwood Place and Buckmaster Lane in a subdivision known as Tantallon on the Potomac. Republic issued a performance bond on behalf of Tantallon, undertaking liability as surety for costs

---

1. John Martin and William Smart were co-principals of Tantallon. The only participation of Jane Martin and Patricia Smart in the events of this case was the signing of an indemnity agreement between Republic and the Martins and Smarts.

incurred in the completion of the work in the event of a default by Tantallon. The bond provided that "in no event shall the liability of [Republic] exceed the sum of $59,-861.00." Republic and the indemnitors entered into a contemporaneous agreement under which the indemnitors agreed to indemnify Republic against any liability incurred by Republic under the bond.

Tantallon received its permit but failed to complete the work described therein. By letter dated 10 November 1986, the County notified Republic that the permit was in default and demanded that Republic either pay the County the amount of $27,666.00 or undertake to complete the work remaining under the permit. The figure $27,666.00 consisted of the County's estimate of the cost to complete the work plus an additional 25% of the estimated cost for contingencies. *See* County Code subtit. 23, § 23–116(d) (1987). Republic took no action on the County's demand. On 29 October 1987, counsel for Republic and the County met and the County again demanded that Republic either pay the County for the remaining work to be done or undertake to complete the work itself. Again, Republic took no action. Accordingly, the County filed suit against Republic. At that time, the estimated cost of completing the work had escalated to $52,018.50. According to evidence presented at trial, the County ultimately expended far more than the $59,861.00 ceiling of the bond to complete the work.[2] The County traced the increase in costs from 1986 to 1990–91, when the work was actually completed, to the erosive effects of rain and vehicle traffic on the unfinished surface of the street and to inflation.

---

**2.** Because it cost the County more to complete the work than the ceiling of the performance bond, we are not presented with the issue of whether the full penalty of the bond could have been recovered by the County regardless of its actual damages. *See Montgomery County v. Phoenix Ins. Co.,* 232 Md. 58, 61, 192 A.2d 111 (1963) ("in the absence of express or implied provisions to the contrary in the statute or ordinance which prescribes the bond, or in the bond itself[,]" the full penalty of the bond may be recovered for its breach, without proof of actual damages).

Additional facts will be discussed as necessary during our analysis of the individual issues presented.

## I.

Republic argues that the County is limited to recovery of damages for the cost to complete the work as of the date of Tantallon's default. Alternatively, it argues that the circuit court erred in failing to instruct the jury on the doctrine of mitigation of damages. We find both arguments to be without merit.

■ A suretyship is a contractual agreement and, therefore, is governed by the Maryland law on the interpretation and construction of contracts. *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985). The bond issued by Republic provides that Republic's obligation "shall remain in full force and effect until the work described in the application has been approved or accepted[.]" In our view, this provision indicates the parties' intention that damages were to become fixed upon the approval or acceptance of the work by the County, rather than upon default.

■ Even were we not to give the above quoted provision of the bond such a construction, we would still reject Republic's argument.

As a general rule, the damages upon breach of contract are to be measured as of the date of the breach. ... Under this rule, later events, such as fluctuations in value after the breach, do not affect the measure of damages.

There are, however, exceptions to this rule. For example, if an insurer delays settling a loss and prices rise during the period of delay, the insurer is liable for the increased costs.

22 Am.Jur.2d *Damages* § 79 (1988).

In *Aycock v. Republic Ins. Co.,* 116 So.2d 317 (La.1959), a fire partially destroyed the plaintiff's home residence, which was insured against such risk by the defendant. At the time of the fire, the cost of repair was estimated at approxi-

mately $3,800. The defendant delayed settlement for a period of almost four months before tendering payment. In the meantime, the cost of materials and repairs rose substantially. The court held that the defendant was liable for the increase in cost, relying upon the following general principle: "In the absence of fraud or estoppel, an insured is not conclusively bound by statements in notice or proofs of loss." *Id.* at 320.

The *Aycock* court also reasoned as follows:

Certainly plaintiff cannot be charged with responsibility for this unforeseen increase in cost. Nor do we think it reasonable to conclude that he should bear the additional expense of such increase. Settlement of the loss was entirely within the hands of the insurer.... Defendant's neglect or failure, with or without what it may have deemed good reason, to make settlement must be assumed to comprehend the assumption of the risk of changing economic conditions.

*Id.* at 321.

Under Maryland law, "if there has been no concealment by the insured, and no resulting disadvantage to the insurers which would give rise to an estoppel, the notices and proofs given do not restrict the claim finally, but may be corrected." *Automobile Ins. Co. v. Thomas,* 153 Md. 253, 262, 138 A. 33 (1927). Of course, we are mindful that the above rule has been applied in cases involving an insurer and insured, rather than a principal and surety. Under the circumstances, however, we think that the relationships are so similar that the rule is applicable.

Under the indemnity agreement, Republic reserved the right, at its election, to settle any claims against it under the bond. Thus, settlement of the loss in the instant case was entirely within the hands of Republic. Republic failed to make settlement with the County. We think that failure "must be assumed to comprehend the assumption of the risk of changing economic conditions." *Aycock,* 116 So.2d at 321.

Republic maintains that the County should be forced to bear the expense of increased costs because the work could have been completed in 1986 for $27,666.00, and reasonable efforts on the part of the County would have prevented the increase in costs above that amount. We disagree. A surety bond represents an undertaking to indemnify or protect a person or the public against losses resulting from acts of the principal. *Lumbermens Mutual Casualty Co. v. Agency Rent–A–Car, Inc.,* 128 Cal.App.3d 764, 180 Cal. Rptr. 546, 550 (1982). *See also Rosenbloom v. Feiler,* 290 Md. 598, 604, 431 A.2d 102 (1981), *quoting* L. Simpson, *Handbook on the Law of Suretyship* § 17, at 28 (1950) ("In suretyship ... the promise is made to protect the promisee creditor in case the principal fails to perform."). Forcing the County to bear the additional expense of increased costs, when Republic was responsible for the failure to settle the loss, would strip the County of the protection that the contract of suretyship was intended to ensure. Having failed to settle on the loss, Republic became liable for increased costs during the period of the delay.

Republic also argues that the circuit court erred in failing to instruct the jury on the doctrine of mitigation of damages. The County responds that Republic never objected to the circuit court's failure to instruct the jury on mitigation of damages. Assuming, *arguendo,* that the issue is properly preserved, our review of the record in the instant case convinces us that the court's instructions to the jury fairly covered the doctrine of mitigation of damages. *See* Maryland Rule 2–520; *Myers v. Estate of Alessi,* 80 Md.App. 124, 132, 560 A.2d 59 (1989) ("To determine propriety of denying a requested jury instruction, a reviewing court must examine whether the requested instruction was fairly covered by the instructions given, and whether the requested instruction is a correct statement of the law based on the evidence presented.").

## II.

We turn next to Republic's contention that it was entitled to indemnity against liability for all sums expended by it in

payment of the debt under the bond. Republic likewise contends that, under the indemnity agreement, it is entitled to attorney's fees incurred by it in defending against the County's action. The indemnitors respond that they were prejudiced by Republic's failure to settle the loss for $27,-666.00 at the time of default and that their obligation to indemnify Republic should be released to the extent of the prejudice. We agree with the indemnitors.

■ As a general rule, the liability of a surety is coextensive with that of the principal. *Seaboard Surety Co. v. Kline, Inc.,* 91 Md.App. 236, 251, 603 A.2d 1357 (1992); *General Builders Supply Co., Inc. v. MacArthur,* 228 Md. 320, 326, 179 A.2d 868 (1962). Departures from the general rule, however, are not unheard of.

> It has been said that 'any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity,' *Hiern v. St. Paul–Mercury Indemnity Co.,* 262 F.2d 526, 529 (5th Cir.1959), or will operate to release the indemnitor 'at least to the extent of the prejudice,' *Denton v. Fireman's Fund Indemnity Co.,* 352 F.2d 95, 99 (10th Cir.1965), or 'will release [the indemnitor's] obligation to the extent of the prejudice.' *New Amsterdam Casualty Co. v. Lundquist* [293 Minn. 274], 198 N.W.2d 543, 549 (1972).

*Rosenbloom v. Feiler,* 290 Md. 598, 611, 431 A.2d 102 (1981).

The above rule is a general principle of suretyship, which has been borrowed in some indemnity contract cases. *Id.* The Court of Appeals in *Rosenbloom* merely assumed its applicability to indemnity contracts for the sake of argument, rejecting the appellant's argument because the appellant in that case had failed to establish any prejudice to himself as a result of the indemnitee's acts.

■ In the instant case, there was evidence that Republic's acts prejudiced the indemnitors. Therefore, we adopt the above stated rule and hold that an indemnitee owes a

duty of good faith to its indemnitor and that any act of the indemnitee that prejudices the rights of the indemnitor will release his obligation to the extent of the prejudice. *New Amsterdam Casualty Co. v. Lundquist*, 293 Minn. 274, 198 N.W.2d 543, 549 (1972).

In determining the nature of the indemnitee's duty of good faith, it is useful to consult the related doctrine, stated in *Sharrow v. State Farm Mutual Automobile Ins. Co.*, 63 Md.App. 412, 424, 492 A.2d 977, (1985), *rev'd on other grounds*, 306 Md. 754, 766, 511 A.2d 492 (1986) (citations omitted), that "[an] insurer has a right—and whenever reasonable and possible, a duty—to settle a claim made against its insured." In *State Farm v. White*, 248 Md. 324, 236 A.2d 269 (1967), the Court of Appeals held that "for an insurer to measure up to the good faith test, its action in refusing to settle must consist of an informed judgment based on honesty and diligence." *Id.* at 333, 236 A.2d 269. The Court also included in its decision the following statement regarding an insurer's duty of good faith:

> The expression 'in good faith' has been held to refer to a lack of a good moral intent as the basis for refusing to pay a loss. Conversely, 'bad faith' means any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent. And if probable cause is shown why payment should have been made, an inference of bad faith might thereby be raised.

*Id.* (citations omitted).

The following explanation of the insurer's duty of good faith, from the case of *City of Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 225 N.W. 643, 645 (1929), is also pertinent here:

> Undoubtedly the insurer does not act in bad faith if it refuses settlement in the honest belief that it has a fair chance of victory, or of keeping the verdict within the policy limit, or, upon reasonable grounds, that the compromise amount is excessive, or if it has legal defenses, as yet undetermined by a court of last resort, which fairly seem applicable.... There may be other bona fide rea-

sons for refusal to compromise. On the other hand, arbitrary refusal to settle for a reasonable amount, ... failure to fairly consider a compromise and facts presented and pass honest judgment thereon, or refusal upon grounds which depart from the contract and the purpose of the grant of power, would tend to show bad faith.

The question before us, then, is whether there is any evidence of bad faith on the part of Republic. In reviewing the propriety of the circuit court's denial of Republic's motion for judgment on this matter, we must consider the evidence, including the inferences reasonably and logically drawn therefrom, in the light most favorable to the party against whom the motion is made, and determine whether there is any evidence, no matter how slight, legally sufficient to generate a jury question. *James v. General Motors Corp.*, 74 Md.App. 479, 483–485, 538 A.2d 782 (1988). Based upon our independent examination of the record in the instant case, we conclude that there was sufficient evidence to send the question to the jury. Republic failed to take any steps to comply with either of the County's demands that it either pay the estimated cost to complete the work required under the bond or complete the work itself. Of course, Republic had no obligation to accept the County's offers of settlement. Under its general obligation of good faith, however, it could not act with complete impunity toward the interests of the indemnitors.

It would appear from the evidence that, from the time of Tantallon's default, Republic had no bona fide defense to liability under the performance bond. Republic introduced absolutely no evidence at trial disputing the County's right to its 10 November 1986 demand for $27,666.00 under the performance bond. Counsel for Republic stated during oral arguments before this Court that Republic intended to rely upon the purported defense of the indemnitors, which was that the remaining work to be done under the permit was the responsibility of Mellon Financial Services Corporation (Mellon), to whom the indemnitors had transferred their interest in the Tantallon on the Potomac subdivision, and,

presumably, their rights and obligations under the permit, in April of 1986. Under the County Code, however, assignment or transfer of a permit is grounds for revocation or suspension of the permit. County Code subtit. 23, § 23–117 (1987). Moreover, neither the indemnitors nor Republic, the indemnitee, ever attempted to assign or transfer the permit to Mellon, to notify the County of such an intention, or to substitute Mellon as the principal obligor under the bond.

Republic appears to have had no good faith basis for its refusal to settle the loss according to the terms offered by the County in 1986. Accordingly, the jury could properly find that Republic was limited to recovering from the indemnitors the amount for which the County's claim could have been settled and reasonable attorney's fees and costs incurred only up to the time of the settlement offer.

## III.

Finally, the County argues that the circuit court abused its discretion in denying the County's request for prejudgment interest from the date of its demand for payment. We find this argument to be without merit. Ordinarily, prejudgment interest is a matter that rests in the discretion of the trier of fact. *First Virginia Bank v. Settles*, 322 Md. 555, 562–565, 588 A.2d 803 (1991). While interest is recoverable as of right in actions on bonds for a liquidated sum of money, *Atlantic States Construction Co. v. Drummond & Co., Inc.*, 251 Md. 77, 85, 246 A.2d 251 (1968), Republic's obligation under the performance bond was not liquidated until the time judgment was entered against it. Accordingly, it was within the circuit court's discretion to deny interest to the County.

JUDGMENTS AFFIRMED. COSTS TO BE PAID TWO-THIRDS BY APPELLANT AND ONE-THIRD BY CROSS-APPELLANT.