641 A.2d 977

The MAXIMA CORPORATION,

v.

6933 ARLINGTON DEVELOPMENT LIMITED PARTNERSHIP.

No. 1228, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 3, 1994.

442

444

Dale A. Cooter (James E. Tompert, Donna S. Mangold and The Cooter Law Firm on the brief), Cheverly, MD, for appellant.

Stuart S. Greenfeig (Jeffrey M. Schwaber and Stein, Sperling, Bennett, DeJong, Driscoll, Greenfeig & Metro, P.A. on the brief), Rockville, MD, for appellee.

Argued before WILNER, C.J., and DAVIS and HARRELL, JJ.

DAVIS, Judge.

This is an appeal from an order of the Circuit Court for Montgomery County acting pursuant to a remand from this Court. *Maxima Corp. v. Cystic Fibrosis Foundation*, 81 Md.App. 602, 568 A.2d 1170, *cert. denied sub nom.*, 319 Md. 582, 573 A.2d 1337 (1990). The genesis of the appeal is a dispute over the provisions and implementation of a commercial lease. Parties to the original suit were the lessor, 6933 Arlington Development Limited Partnership (Arlington), The Maxima Corporation (Maxima), an assignee of the original lease, and Cystic Fibrosis Foundation (Cystic), a subtenant of Maxima. Arlington had leased Suite 200 on the second floor of the subject property and basement space (T100) to Technassociates, Inc. (TI) under the "Master Lease," which provided that Arlington would agree to waive the first six months of rent; to pay $260,000 to TI as a "signing Payment" upon execution of the lease; to pay $260,000 as an "Occupancy Payment" upon TI's occupying the premises; and to pay a final $200,000 as an "Anniversary Payment" on the first anniversary of the commencement of the leased term.

After Maxima acquired TI's interest in the lease and sublet of Suite 200 to Cystic Fibrosis, a dispute arose because T100 had remained unoccupied. The dispute culminated in a rejection by Arlington of a proposed offer by Maxima to sublease T100 to Cystic. Cystic filed a complaint naming Arlington and Maxima as defendants, seeking declaratory judgment that it was entitled to remain in Suite 200 and that it was entitled to a monetary award for tenant incentive payments. Maxima cross-claimed against Arlington, seeking damages for breach of the Master Lease, indemnity, and declaratory relief. Arlington counterclaimed against Cystic for hold-over rent as to

Suite 200 and filed a cross-claim against Maxima for indemnity. The trial court found that Maxima had breached its lease with Arlington and ordered it to pay damages to both Arlington and Cystic.

On appeal, this Court made the following rulings, respectively: (1) affirmed the trial court's ruling that Maxima defaulted on the Master Lease; (2) reversed the trial court's ruling that Arlington's refusal to agree to Maxima's proposed sublease was reasonable; (3) reversed the trial court's ruling that Maxima was liable for damages to Arlington from the point at which Cystic was presented as a subtenant to Arlington; (4) affirmed that Cystic was a subtenant of Maxima and not an assignee of the Master Lease; (5) affirmed that the Master Lease was one lease and not bifurcated; (6) ruled that "Arlington may not recover from Maxima for any damage related to the T100 space beyond that incurred due to Maxima's failure to occupy the space from September, 1986 to September, 1987, the date it proposed to Arlington a subtenancy to Cystic"; (7) vacated those portions of the trial judge's damage award as between Maxima and Arlington relating to lost rent, operating costs, taxes, and attorneys' fees; (8) noted that "under the master lease, Arlington's obligation to make the tenant incentive payments remained even in the face of a default," because Maxima's attempted cure was rejected; (9) affirmed the trial court's ruling to deny Arlington a forfeiture against Cystic; (10) affirmed that Arlington was not entitled to holdover rent or a refund of its incentive payment because Cystic was entitled to remain in possession; (11) reversed the trial court's denial of attorneys' fees to Cystic from Maxima; and (12) held that Cystic was entitled to its contracted share of the incentive payments, which this Court has held that Arlington owes Maxima.

On remand, the trial court issued the following pertinent orders:[1]

---

1. Through the services of a court-appointed special master, the parties stipulated to their respective damages.

[1] that judgment be, and is hereby entered in favor of Arlington and against Maxima in the amount of $56,-154.60, representing rent for the T100 space from March 3, 1987 to September 15, 1987, plus interest and late fees until February 2, 1989, interest on this judgment to accrue at the rate of $15.38 per day from March 7, 1989;
...

[2] that judgment be and is hereby entered in favor of Maxima and against Arlington in the amount of $255,-007.06, representing:

[ (a) ] the unpaid balance of the Occupancy Payment;

[ (b) ] the Anniversary Payment; and

[ (c) ] the costs on appeal, interest on the judgment to accrue at the rate of $69.55 per day from the entry of this judgment; ...

[3] that judgment be and is hereby entered in favor of Maxima and against Arlington in the amount of $70,-068.78[2] as indemnification for the payment of Cystic's net legal fees; ...

[4] that Arlington submit documentation to this Court to support an award of attorney[s'] fees for the time counsel expended related to Maxima's default under the lease with respect to its failure to pay rent from March 3, 1987 through September 3, 1987; ... and

[5] in accordance with Section 41 of the Lease, that the judgment in favor of Maxima and against Arlington shall be satisfied solely from the equity in the Leased Premises....

Pursuant to this order, Arlington submitted a two page schedule of fees to the court. The schedule stated only the dates, hours spent, and billing rate. Several dates indicated well over twenty-four hours charged without specifying the names of the attorneys performing the services. The trial

---

2. By order dated February 23, 1993, this amount was increased to $105,406.90 to incorporate $35,338.12 already applied by Maxima to Cystic's attorneys' fees.

court, by letter dated February 26, 1993, requested a more detailed schedule. By letter dated March 10, 1993, Arlington requested an *in camera* inspection of the bills after unrelated charges were redacted. Maxima indicated its opposition to the *in camera* inspection in a letter dated March 11, 1993. On June 9, 1993, the trial judge ordered an award of attorneys' fees in favor of Arlington in the amount of $127,945.

Maxima, appellant/cross-appellee, presents the following issues:

 I. Whether the [trial c]ourt erred in granting Appellee Arlington $127,945 in legal fees.

 II. Whether the [trial c]ourt erred in denying appellant Maxima's claim for relief, including pre-judgment interest, post-judgment interest and legal fees.

 III. [Whether the trial court erred when it ruled that damages awarded to Maxima against Arlington should be satisfied solely from the equity in the leased premises.][3]

Arlington, appellee/cross-appellant, presents the following issue:

 IV. Whether the trial court erred in granting Maxima $105,406.90 against Arlington as indemnification for the payment of Cystic's attorneys' fees assessed against Maxima.

## FACTS

The facts giving rise to the original appeal were detailed in our opinion, *Maxima,* 81 Md.App. at 606–609, 568 A.2d 1170, and, therefore, will only be repeated as necessary. The premises located at 6391 Arlington Boulevard, Bethesda, Maryland, had been originally leased by Arlington to Technassociates, Inc. Arlington extended to Technassociates certain tenant incentives including waiver of the first six months of

---

3. The issue was less cogently phrased by Maxima: "Whether the Court erred in ruling on an issue that was outside the scope of the remand and was not raised by the pleadings."

rent, payment of $260,000 as a "signing Payment," payment of $260,000 as an "Occupancy Payment," and an Anniversary Payment to be made on the first anniversary of the commencement of the leased term.

Arlington paid TI the signing payment. Subsequently, Maxima acquired TI's interest in the lease and sublet Suite 200 to Cystic. When Cystic moved into Suite 200, on October 3, 1986, Maxima demanded the $260,000 Occupancy Payment. Arlington refused to make the Occupancy Payment because T100 remained unoccupied, but later offered a partial payment if Maxima assumed responsibility for an alleged 30 day delay in occupancy of the premises leased to Cystic. Thereafter, Arlington tendered to Maxima partial payment—a $204,441.55 check—the negotiability of which was conditioned on Maxima's signing of an attached addendum to the lease recognizing September 3, 1986 as the commencement date of the lease; thus the six month waiver period would end in February and rent payments would begin accruing on March 3, 1987. Maxima negotiated the check but did not sign the addendum.

In July 1987 renovation of T100 was complete, and Arlington notified Maxima that it would be in default if it did not occupy that space. After a series of negotiations, Maxima offered to sublease T100 to Cystic. Arlington rejected the proposal and notified Maxima and Cystic that it would repossess the leased premises. Cystic filed a complaint naming Arlington and Maxima as defendants, seeking a declaration that it was entitled to remain in Suite 200 and that it was entitled to a monetary award for tenant incentive payments. Maxima cross-claimed against Arlington, seeking damages for breach of the Master Lease, indemnity, and declaratory relief. Arlington counterclaimed against Cystic for holdover rent as to Suite 200 and cross-claimed against Maxima for indemnity.

## LEGAL ANALYSIS

### I

Maxima argues that the trial court committed reversible error because (a) it did not comply with Md.Rule 2–522(a)

and "dictate into the record or prepare and file in the action a brief statement of the reasons for the decision and the basis of determining" [4] the amount of attorneys' fees relating to Maxima's failure to occupy space T100 from September 1986 to September 1987; and (b) the amount of attorneys' fees awarded is excessive. Appellant further suggests that the trial court erred when it examined, *in camera,* the only detailed attorneys' fee schedule submitted and did not permit appellant or appellant's counsel to review or challenge the fee schedule.

In response, appellee contends that the record leading up to the trial judge's order reveals that Arlington was awarded attorneys' fees for the litigation against Maxima regarding the occupancy of T100 from September 1986 to September 1987. Examples supporting this claim, asserts appellees, include this Court's mandate requiring the trial court to recalculate attorneys' fees; the trial court's order dated September 24, 1992, which ordered "that Arlington submit documentation to this Court to support an award of attorney[s'] fees for the time counsel expended related to Maxima's default under the lease with respect to its failure to pay rent from March 3, 1987 through September 3, 1987"; [5] and a February 26, 1993 letter from the trial judge to Arlington (a copy was sent to Maxima's counsel), requesting more detailed information delineating what services were rendered and how the charges related to Maxima's default.

We are unpersuaded by appellee's assertions. Although the record sets forth why, generally speaking, attorneys' fees were awarded, the record fails to disclose sufficiently why the amount awarded was reasonable. Moreover, the court's statement failed to comport with Rule 2–522(a); the record does

---

**4.** Rule 2–522(a) provides:

> **Court Decision.**—In a contested court trial, the judge, before or at the time judgment is entered, shall dictate into the record or prepare and file in the action a brief statement of the reasons for the decision and the basis of determining any damages.

**5.** Rent did not become due until March because Arlington waived the first six months of rent.

not provide sufficient competent evidence to support the amount of fees awarded (Rule 8–131(c)) and the trial judge's review of Arlington's attorneys' fees *in camera* was a plain error of law.

## A

The legal basis for Arlington's award of attorneys' fees is Master Lease Sections 25 and 15, which provide, in pertinent part:

> *Section 15. Indemnity.* . . . In case Landlord or Tenant shall be made a party (ies) to any litigation commenced by or against the parties based on an act or omission of either party, then Tenant and Landlord shall protect and hold each other harmless, and shall pay all costs, expenses and reasonable attorneys' fees incurred or paid by the other in connection with such litigation. Tenant and Landlord shall also pay all costs, expenses and reasonable attorneys' fees that may be incurred or paid by the other in successfully enforcing the covenants and agreements in this Lease.
>
> . . . .
>
> *Section 25. Defaults of Tenant.* . . . .
>
> (e) . . . . In addition to the foregoing, Tenant shall pay to Landlord reasonable attorneys' fees with respect to any lawsuit or action instituted by Landlord to enforce the provisions hereof.

 As a general rule, a trial court may award attorneys' fees only in the unusual situation where the trial court is authorized to award the prevailing litigant reasonable attorneys' fees or where, as more common, a contract between the parties specifically authorizes attorneys' fees. *Reisterstown Plaza v. General Nutrition Centers, Inc.,* 89 Md.App. 232, 241–42, 597 A.2d 1049 (1991) (citing cases); *Maxima,* 81 Md.App. at 622, 568 A.2d 1170; *see also Bankers and Shippers Ins. Co. v. Electro Enter., Inc.,* 287 Md. 641, 661, 415 A.2d 278 (1980). Moreover, in this jurisdiction, "as a general rule the question of attorneys' fees is a factual matter which lies within the 'sound discretion of the trial judge and will not be overturned unless clearly erroneous.'" *Reisterstown Plaza,*

89 Md.App. at 248, 597 A.2d 1049, quoting *Dent v. Simmons,* 61 Md.App. 122, 127, 485 A.2d 270 (1985), quoting *Foster v. Foster,* 33 Md.App. 73, 81, 364 A.2d 65, *cert. denied,* 278 Md. 722 (1976).

■ In circumstances in which attorneys' fees are awarded based on a contractual right, the losing party is "entitled to have the amount of fees and expenses proven with the certainty and under the standards ordinarily applicable for proof of contractual damages." *Bankers,* 287 Md. at 661, 415 A.2d 278. In *Bankers,* the Court of Appeals reversed the trial court's award of only 30 percent of the total attorneys' fees sought. The Court remarked that

> the informal hearing conducted by the trial court neither required any real proof of the amount of the fees and expenses claimed *nor provided Bankers with a realistic opportunity to challenge those fees and expenses....* Instead, the parties merely submitted, prior to the hearing, informal fee and expense petitions and made short, oral representations at the hearing of the amounts claimed. On remand, there should be a proper trial regarding the damages incurred....

*Id.* at 661–62, 415 A.2d 278.

Other jurisdictions have delineated the detail required and the quantum of information that the prevailing party must provide. The overwhelming authority holds that (a) the party seeking the fees, whether for him/herself or on behalf of a client, always bears the burden of presenting evidence sufficient for a trial court to render a judgment as to their reasonableness; (b) an appropriate fee is always reasonable charges for the services rendered; (c) a fee is not justified by a mere compilation of hours multiplied by fixed hourly rates or bills issued to the client; (d) *a request for fees must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged;* (e) it is incumbent upon the party seeking recovery to present detailed records that contain the relevant facts and computations undergirding the computation of charges; (f) without such records, the reasonableness, *vel non,* of the fees can be deter-

mined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill.App.3d 978, 115 Ill.Dec. 899, 902–03, 518 N.E.2d 424, 427–28 (1987) (collecting Illinois case law for the foregoing propositions). *Accord Kinsey v. Preeson*, 746 P.2d 542, 552 (Col.1987) (trial court's findings regarding award of attorneys' fees were insufficient where determination of reasonableness was based on an affidavit submitted after trial and no opportunity was provided to challenge the affidavit); *Sperber v. Penn Cent. Corp.*, 150 A.D.2d 356, 540 N.Y.S.2d 877, 878 (1989) (absent evidence regarding specifics as to the time and labor required, the record was insufficient to determine reasonable attorneys' fees); *see also Bosch Die Casting, Co. v. Lunt Mfg. Co.*, 236 Ill.App.3d 18, 177 Ill.Dec. 476, 482–83, 603 N.E.2d 546, 552–53 (Ill.App.Ct.1992).

Once presented with these facts, the trial court must still evaluate the reasonableness of the fees. Again, the burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.[6] Maryland courts consider a variety of factors including, but not limited to, those delineated in Md.Rule 1.5. Those factors are:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

---

6. Of course, certain factors are within the court's general knowledge and are amenable to judicial notice. *See Bosch Die Casting Co.*, 177 Ill.Dec. at 485, 603 N.E.2d at 555; 20 C.J.S. Costs § 152, at 127.

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

*Reisterstown Plaza,* 89 Md.App. at 247, 597 A.2d 1049; *Attorney Grievance Comm'n v. Korotki,* 318 Md. 646, 664–65, 569 A.2d 1224 (1990).

## B

Arlington submitted below only a very cursory schedule of its attorneys' fees that included the rate charged, the number of hours worked, and the dates that work was performed. Arlington urged, via letter, apparently to the trial judge's satisfaction, that it could not be ordered to submit its detailed fee schedule because it was "concerned with the disclosure of attorney/client information that may be set forth in these statements, even after redacting various portions of the statements." Nonetheless, detailed fee schedules were included for an *in camera* inspection only, and a suggestion was made that a hearing be held if the court thought that it was necessary for Maxima's counsel to review the statements. Maxima responded to the trial judge regarding Arlington's letter, objecting to an *in camera* inspection and suggesting that the trial court would nevertheless need to make a detailed explanation of the basis of its fee award. The trial court ordered an award of attorneys' fees in the amount of $127,945.00 without explanation.

■ The trial court erred in not permitting Maxima to review the fee schedule submitted *in camera,* to cross-examine Arlington and its attorneys' on those records, and to provide its own contradictory evidence. Attorneys' bills are generally not protected by the attorney-client privilege; and to the extent that portions of a bill might have been privileged, Arlington's blanket assertion was inadequate.

■■ Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is

applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney. *Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir.1992); *accord Criminal Investigation,* 326 Md. at 11, 602 A.2d 1220 (privilege is not absolute). Moreover, the burden of establishing the privilege is on the party asserting the privilege. *Id.*

In *In re Criminal Investigation No. 1/242Q,* 326 Md. 1, 11, 602 A.2d 1220 (1992) [hereinafter *Criminal Investigation* ], the attorney sought to quash a subpoena on the ground that the information was privileged and confidential. In holding that the attorney's motion should have been denied, the Court of Appeals wrote

> The overwhelming weight of authority holds that the attorney-client privilege is generally not violated by requiring disclosure of the payment of attorney's fees and expenses. "Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating."

*Id.* at 7, 602 A.2d 1220, quoting *In re Osterhoudt,* 722 F.2d 591, 593 (9th Cir.1983). The Court of Appeals was satisfied that the fee arrangement between an attorney and client is collateral to, and not an integral part of, the fiduciary relationship and that disclosure of the fee would not have a chilling effect on the relationship. *Id.*

The only exception to the general rule here pertinent is where "disclosure of the client's identity or the existence of a fee arrangement would reveal information that is tantamount to a confidential professional communication." *Id.,* 326 Md. at 9, 602 A.2d 1220. In the instant case, the necessity of submitting fee information is addressed not to Arlington's attorney but to the client, the holder of the privilege, and the party seeking reimbursement for its expenses.

In *Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir.1992), the U.S. District Court for the Central District of California wrote:

[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of the law, fall within the privilege.

In addition, regardless of the privilege, the party seeking reasonable attorneys' fees provided by contract bears the ultimate burden of providing sufficient evidence to prove its damages. *Bankers,* 287 Md. at 661, 415 A.2d 278. The attorney-client privilege may prevent disclosure of portions of a fee schedule; it does not, however, absolve the recovering party from its burden of proving damages.

■ An *in camera* inspection may be appropriate to inspect alleged confidential communications to determine whether the privilege applies. *Clarke,* 974 F.2d at 129 (9th Cir. 1992). A blanket assertion is generally "extremely disfavored," and ordinarily the privilege must be raised as to each record so that the court can rule with specificity. In the case *sub judice,* fees were restricted to certain services and, therefore, the attorneys were already required to review the billing record to isolate the fees associated with that specific service.

■ A trial court's ruling on the scope of the attorney-client privilege is a mixed question of fact and law, and we review it *de novo. See Clarke,* 974 F.2d at 130. Nonetheless, because Arlington has not made a specific and detailed motion alleging that certain portions of the numerous billing entries are privileged, we decline to review the billing entries at this time. Rather, we will remand to the circuit court and give Arlington an opportunity to raise properly the attorney-client privilege.

To be sure, a finding that information in attorneys' bills is within the attorney-client privilege is the exception and not

the general rule. The fact that a motion was prepared or research was completed on an issue in a motion that was obviously already filed is a mere description of the work and is not privileged. It is only the rare instances, for example, where a description would hinder the parties' active litigation that it should be redacted *in camera*. We are mindful that it is the client who seeks reimbursement for fees he or she owes, making the onus of disclosing one's "private" bills very reasonable.

### C

Maxima argues that an award of attorneys' fees in the amount of $127,945 to collect $56,535.42 in rent is excessive as a matter of law. It would be precarious for us to decide this issue given the nature of our remand:

— A hearing must be held so that Maxima can properly contest the amount of fees reasonably related to Maxima's failure to occupy T100 between September 1986 and September 1987.

— This trial may result in a decrease in the amount of fees recoverable by Arlington.

— After such a hearing, the trier of fact will need to make factual findings.

In this regard, it should be noted that, although Maryland Courts may not have specifically ruled that a trial court must evaluate each factor delineated in Md.Rule 1.5 on the record, the law is clear that the trial court's evaluation of a claim for attorneys' fees must be based on a record that includes information that sufficiently and competently supports the court's findings. *Bankers,* 287 Md. at 661–62, 415 A.2d 278; Md.Rule 8–131(c).

### II

#### A

Maxima next asserts that the trial judge erred in not awarding to it prejudgment interest on the amount of the

balance of the Occupancy Payment; the Anniversary Payment; and the costs of appeal, which total $255,007.06. Three arguments are marshaled in support of this position:

(1) prejudgment interest is granted as a matter of law where the damages are liquidated;

(2) the lower court's March 7, 1989 order, regarding Cystic's damages against Maxima—for incentive payments that Maxima would pass through from Arlington—included prejudgment interest payments and, therefore, Maxima deserves to receive prejudgment interest payments;

(3) the trial judge abused her discretion in not awarding prejudgment interest.

In response, Arlington contends that the issue of prejudgment interest is simply beyond the scope of this Court's remand and should not be considered. Moreover, granting prejudgment interest is a matter solely within the sound discretion of the trial judge.

■ Maryland Rule 2–604 specifically recognizes the award of prejudgment interest: "Any pre-judgment interest awarded by a jury or by a court sitting without a jury shall be separately stated in the verdict or decision and included in the judgment." The purpose of prejudgment interest is to compensate the aggrieved party for the loss of the use of the liquidated sum owed, and accordingly the loss of the income that such funds could generate. *I.W. Berman Prop. v. Porter Bros., Inc.,* 276 Md. 1, 24, 344 A.2d 65 (1975).

■ Maryland law regarding the availability of prejudgment interest is well settled. The general rule is that determination of interest should be left to the discretion of the fact finder, and certain exceptions exist that are as well established as the general rule. A contractual obligation to pay a liquidated sum at a certain time and where the money has already been used are pertinent exceptions where interest is recoverable as a matter of right. *Berman,* 276 Md. at 16–18, 344 A.2d 65, relying on *Affiliated Distillers Brand Corp. v. R.W.L. Wine and Liquor Co.,* 213 Md. 509, 132 A.2d 582 (1957); *City*

*Pass. Rwy. Co. v. Sewell,* 37 Md. 443, 452 (1873); *see also Travel Committee, Inc. v. Pan American World Airways, Inc.,* 91 Md.App. 123, 188, 603 A.2d 1301 (1992).

In the case *sub judice,* the tenant incentive payments were a liquidated amount and a sum certain that Arlington owed on specific dates pursuant to a contract. Consequently, recovery of prejudgment interest was as a matter of right. *Berman,* 276 Md. at 17, 344 A.2d 65; *Travel Committee Inc.,* 91 Md.App. at 188, 603 A.2d 1301.

Arlington relies on *Kirsner v. Edelmann,* 65 Md.App. 185, 499 A.2d 1313 (1985), for its assertion that the trial court was precluded by our mandate from granting prejudgment interest because "Maxima is unable to cite any portion of this Court's [o]pinion or mandate to substantiate its entitlement to prejudgment . . . interest." The following portion of *Kirsner* is quoted by Arlington: "When the appellate court has decided the appeal and its mandate has issued, the lower court may act again, albeit only in conformity with the mandate, on those issues which were the subjects of the appeal." *Id.* at 193, 499 A.2d 1313, citing *Staggs v. Blue Cross of Md.,* 57 Md.App. 576, 578, 471 A.2d 326 (1984).

Our mandate read: "JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–THIRD BY ARLINGTON DEVELOPMENT LIMITED PARTNERSHIP, ONE THIRD BY THE CYSTIC FIBROSIS FOUNDATION, AND ONE–THIRD BY THE MAXIMA CORPORATION." *Maxima,* 81 Md.App. at 623, 568 A.2d 1170. The pertinent portion of our opinion regarding the tenant incentive payments stated:

> "In remanding the matter to the circuit court for reconsideration of its damage award [ (we vacated those portions of the award as between Maxima and Arlington relating to lost rent, operating costs, taxes, and attorneys' fees) ], we further note that, under the Master Lease, Arlington's obli-

gation to make the tenant incentive payments remained even in the face of a default, so long as Maxima cured." *Id.* at 620, 568 A.2d 1170.

The award of prejudgment interest was an inseparable right incident to the award of the incentive payments. For this reason, it was implicit in our mandate and, therefore, within the trial court's authority to award Maxima prejudgment interest for the tenant incentive payments. Indeed, Md.Rule 8–604(d) provides that "[u]pon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

*Union Trust Co. of Maryland v. Harrisons' Nurseries, Inc.,* 181 Md. 291, 29 A.2d 668 (1943), is analogous. On the first appeal of that case, the Court of Appeals held that the trial court erred in determining the amount of total money loaned between the parties. The remand read: "Decree reversed and case remanded for further proceedings and passage of a decree to conform with this opinion, the costs to be paid out of the proceeds of the mortgagee's sale," *Union Trust Co. of Md. v. Harrisons' Nurseries, Inc.,* 180 Md. 651, 657, 26 A.2d 812 (1942); and the opinion stated in pertinent part that "the decree appealed from should be so amended as to declare that the amount of bonds issued and outstanding is not $119,000, but that amount plus such additional bonds as represent the amount of moneys as was loaned or advanced by the trust company after the loan of December 2, 1929." *Id.* at 656, 26 A.2d 812.

In the second appeal, it was alleged that the trial judge did not include interest at the rate of 6 percent on the overdue bonds, as included in the parties' agreement. The Court of Appeals held that the trial court erred in not granting the award of interest. Although it was not contended in that case that interest was beyond the scope of the prior appellate mandate, it is relevant that the Court of Appeals believed that its mandate would obviously include the award of interest that was an essential part of the agreement and that it did not

specifically need to state the award of interest in its mandate or opinion. *Union Trust,* 181 Md. at 295, 29 A.2d 668.

*Winter's Executors v. Gittings,* 102 Md. 464 (1906), is an early case discussing prejudgment interest in the context of a remand. In that case, a complaint was brought to declare that the proceeds of certain securities sold by a husband in his lifetime were actually the property of the wife's legal representative. The Court of Appeals reversed the trial court's dismissal, and the case was remanded pursuant to the court's opinion, which established for the first time that the amount the estate should be charged was $29,000. On remand the trial court did not award prejudgment interest. Appeal was taken, and the Court of Appeals held that the trial court did not err in declining to award prejudgment interest because the sum of $29,000 was not a sum certain until the appellate court stated so in the first appeal. In dicta, the court noted that in any event the trial court's order conformed "literally" to the appellate mandate. Nonetheless, the Court's extensive analysis of the "sum certain" issue belies any contention that its holding was based on the latter ground. Rather, the Court affirmed the trial judge on the ground that prejudgment interest was not warranted as a matter of right, not that the trial court was precluded from awarding it discretionarily in granting prejudgment interest where the trial court complied literally with the mandate.

Other jurisdictions that have addressed circumstances similar to the case *sub judice* have held that the trial court is empowered to award prejudgment interest because it was owed as a matter of right, incidental to the contractual right. *Powell v. Sparks Milling Co.,* 149 S.W.2d 22, 24 (Ky.Ct.App. 1941); *Steinfeld v. Zeckendorf,* 15 Ariz. 335, 138 P. 1044 (1914); *see also* 5 C.J.S. Appeal and Error § 995 (1993) (where the amount of the judgment was liquidated, courts permit prejudgment interest even if the mandate was silent on interest).

In *Powell,* the appellant did not dispute that the appellee was entitled to interest as a matter of law on its judgment but

predicated its argument for a reversal upon the rule of law that the lower court, upon remand from the appellate court, must obey its mandate and is not authorized to act inconsistently with the appellate mandate. The Court of Appeals of Kentucky upheld the trial court's award of prejudgment interest on the sum certain owed, reasoning, that "where the facts disclosed by the record are such that consequential relief is necessarily, or, as a matter of law, incident to the main relief authorized by the opinion and directed by the mandate, the judgment entered pursuant thereto should include the consequential relief." *Powell,* 149 S.W.2d at 24. The very same reasoning was applied in *Steinfeld.*

 The same logic is not applicable with respect to legal fees. Prejudgment interest was not recoverable as a matter of right on this unliquidated amount; therefore, the award of prejudgment interest was encompassed within the trial court's discretion. *Republic Ins. Co. v. Prince George's County,* 92 Md.App. 528, 539, 608 A.2d 1301 (1992); *Berman,* 276 Md. at 19–20, 344 A.2d 65. Moreover, in the context of prejudgment interest, the burden rests upon the moving party to establish, given the circumstances of the case and the equities between the parties, that the court abused its discretion. *Berman,* 276 Md. at 20, 344 A.2d 65. In the case *sub judice,* Maxima asserts that equity requires an award of prejudgment interest because Arlington had the benefit of using the tenant incentive payments until judgment was rendered. This argument, however, does not address the issue of prejudgment interest on attorneys' fees, a matter distinct from the tenant incentive payments. Maxima has not met its burden of establishing an abuse of discretion regarding the court's failure to award prejudgment interest on attorneys' fees. *Id.; Republic,* 92 Md.App. at 539, 608 A.2d 1301.

### B

 Maxima asserts that it is entitled to post-judgment interest accruing from March 7, 1989, the date the circuit court entered its initial judgment. Alternatively, interest

should begin to accrue from February 6, 1990, the date this Court ruled in Maxima's favor. In any event, Maxima argues that interest should begin to accrue prior to the circuit court's September 24, 1992 order, issued after remand.

Maryland Rule 2–604(b) states that "[a] money judgment shall bear interest at the rate prescribed by law from the date of entry." The date of entry is determined by cross-reference with Rule 2–601. Paul V. Niemeyer and Linda M. Richards, MARYLAND RULES COMMENTARY 354 (1984). Indeed, the purpose of post-judgment interest "is obviously to compensate the successful suitor for the ... loss of the use of the monies represented by the judgment in its favor, and the loss of income thereon, between the time of the entry of the judgment *nisi*—when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment." *Berman,* 276 Md. at 24, 344 A.2d 65. Rule 2–601(b) is patent that judgment is not entered until the ministerial act of entering judgment on a file jacket, a docket, or docket sheet, according to the court's practice, is complete. MARYLAND RULES COMMENTARY, *supra,* at 346 (the date of judgment is the date of physical entry on the public record).

In accordance with the foregoing provisions, the record in the case *sub judice* indicates that the docket entry for Maxima's judgment against Arlington was made September 24, 1992. Therefore, the trial court properly ordered that post-judgment interest shall begin to run from that date.

## C

Maxima contends that the trial court erred in not granting it attorneys' fees on remand based on Section 15 of the lease. Arlington argues that the trial court properly denied an award of attorneys' fees because such an award was beyond the scope of the remand.

In our prior opinion we vacated those portions of the trial judge's damage award as between Maxima and Arlington relating to lost rent, operating costs, taxes, and attorneys' fees. This was necessary because we were reversing the trial

judge's ruling that Maxima did not attempt to cure. Arlington's damage award had to be recalculated to be limited to Maxima's default on the T100 space between September 1986 and September 1987. Moreover, we made it clear, for purposes of remand, that because Maxima essentially cured, Arlington remained obligated to make the tenant incentive payments as required by the lease. *Maxima,* 81 Md.App. at 620, 568 A.2d 1170. Thus, we conclude that on remand the trial court was not only patently authorized to award Maxima attorneys' fees incurred in recouping the tenant incentive payments it was owed, but was required to do so under Section 15 of the Master Lease. *See Union Trust,* 181 Md. at 295, 29 A.2d 668 (where remand did not mention interest, lower court erred when it did not grant interest as mandated in the parties' agreement).

## III

 Maxima contends that the trial court exceeded the scope of its authority upon remand when it ruled that the damages awarded Maxima against Arlington should be satisfied solely from the equity in the leased premises. Arlington argues that application of Section 41 of the parties' lease was not beyond the scope of remand because it was only after this Court's opinion that Arlington was liable to Maxima for damages, and Section 41 provides that the tenant can only recover from the equity of the leased premises in this circumstance.

This Court does not try cases. Ordinarily, we only review issues that have been properly raised and decided below. Rule 8–131(a). Maxima's assertion that this Court "made no limitation on the funds from which Arlington would make these payments" ignores the reality that such matters are intended to be resolved at the trial level. Indeed, that is the purpose of a remand. *See* Md.Rule 8–604(d) ("[u]pon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court").

When an appellate court reverses a lower court's determination, there often arises a need to try an issue that had been vitiated by the lower court's ruling. Determination of this issue is generally beyond the scope of the appellate proceedings because it was not tried and decided below. Rule 8–131(a). Thus, this case was remanded for further proceedings consistent with this Court's ruling, including resolving the issues in light of the parties' agreement under the Master Lease. We reject Maxima's contention that the trial court is without authority on remand to look at the document that defines the parties' relationship.

Finally, Maxima asserts in its reply brief that Section 41 is not controlling because Section 2 of the Lease Addendum provides that the terms of the Addendum "supersede and control any provision of the Lease which conflict herewith," and Section 4 of the Addendum provides that Arlington will pay the signing, occupancy, and anniversary payments "in cash or check." We conclude from the Addendum sections cited by Maxima only that the payments made from the equity of the leased premises shall be in cash or check, as opposed to, for example, in kind payments of free or reduced rent, etc. The trial court did not err when it ruled that damages awarded to Maxima from Arlington should be satisfied solely from the equity in the leased premises.

## IV

On remand the trial court awarded Maxima $105,-406.90 from Arlington as indemnification for the attorneys' fees this Court mandated that Cystic was owed pursuant to its contractual agreement with Maxima. Arlington asserts that the trial court erred because (1) the trial court's initial ruling denied Maxima's request for attorneys' fees from Arlington and (2) this award was beyond the scope of this Court's remand. Arlington does not assert that the amount of the award was in error, should we find that the award was otherwise proper.

In response, Maxima argues that Arlington is confusing the trial court's denial of attorneys' fees with Maxima's contractual right of indemnification. Moreover, Maxima's right of indemnification is an issue that emanates directly from this Court's opinion and mandate.

The issue of Maxima's indemnification from Arlington for Cystic's attorneys' fees could not have been decided in the first trial because it arises only from this Court's February 6, 1990 opinion and mandate. Moreover, we do not find that the trial judge erred in ordering Arlington to indemnify Maxima for Cystic's legal fees.

Three elements are crucial to our holding: (1) our prior opinion, (3) our prior mandate, and (3) the lower court's authority upon remand. Regarding Cystic's right to attorneys' fees, this Court opined in *Maxima*, 81 Md.App. at 622, 568 A.2d 1170:

We do not believe, however, that Cystic's institution of a suit it eventually won precludes it from benefitting from the terms of its agreement with Maxima. In light of the specific provisions for fees contracted for by Maxima and Cystic, we hold that the trial judge erred in denying Cystic its attorneys' fees.

Our mandate read in pertinent part: "JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION." Rule 8–604(d) provides in part that, "[u]pon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

It is clear from our opinion that the contractual provision that we referred to was Section 15 of the Master Lease, which we quoted in full and which was incorporated by reference into the sublease between Maxima and Cystic. The trial court's actions on remand were consistent with our opinion and mandate—Cystic contracted for indemnification of attorneys' fees from Maxima and Maxima contracted for indemnification

of attorneys' fees from Arlington. Cystic was a sublessee and had no privity of contract with Arlington; only Maxima could recover under the Master Lease, which was the crux of the attorneys' fees action.

Finally, to the extent that Arlington alleges that the mandate in Maxima was ambiguous, we believe that the "opinion and other surrounding circumstances" indicate that the intent of this Court was to permit the lower court to resolve fully the issues arising from a resolution of our reversal of the denial of Cystic's attorneys' fees. *Balducci v. Eberly,* 304 Md. 664, 500 A.2d 1042 (1985) ("[w]here a mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court") (citing cases). To have denied the lower court authority to resolve Maxima's indemnification claim would have served only to require more litigation on this very issue, a result we did not intend.

**ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ⅓ BY APPELLANT/CROSS–APPELLEE THE MAXIMA CORPORATION AND ⅔ BY APPELLEE/CROSS–APPELLANT 6933 ARLINGTON DEVELOPMENT CORPORATION.**