**BELL BCI COMPANY**

v.

**HRGM CORPORATION**

and

**Atlantic Mutual Insurance Company**

No. CIV. JFM–03–1357.

United States District Court,
D. Maryland.

Aug. 5, 2003.

Richard O. Wolf, Moore and Lee LLP, McLean, VA, for Plaintiff.

Craig Alan Holman, Kara L. Daniels, Holland and Knight LLP, Washington, DC, for Defendants.

## MEMORANDUM

MOTZ, District Judge.

BELL BCI Co. ("BELL") initiated this suit against Atlantic Mutual Insurance Co. ("Atlantic") and HRGM Co. ("HRGM") alleging breach of contract and breach of fair dealing and good faith. Now pending before me is Atlantic's motion to dismiss Count III of the complaint. For the reasons that follow, the motion will be granted.

### I.

BELL entered into a contract with the United States Department of the Navy for the construction and renovation of certain facilities at the Patuxent River Naval Air Station in St. Mary's County, Maryland. On January 7, 2002, BELL entered into a subcontract with HRGM whereby HRGM was to "provide all labor, materials, equipment etc. to complete the Tank and Steel Coatings work." (Compl.¶ 7.) According to BELL, the subcontract work of HRGM was critical to the successful and timely completion of the project.

Pursuant to the subcontract agreement, HRGM was required to obtain a performance bond. On February 21, 2002, Atlantic, as a surety, provided a bond in the amount of $409,000 to HRGM. The bond expressly limits Atlantic's liability to the reasonable cost of completing the subcontract and caps Atlantic's liability at the amount of the bond. (Compl. Ex. 2 at 2.)

According to BELL, HRGM subsequently failed to timely, fully, and properly perform under the subcontract. On September 27, 2002, due to HRGM's repeated failure to take steps necessary to complete its work, BELL declared HRGM in default and terminated the subcontract. BELL also requested that Atlantic fulfill its obligations under the bond. Atlantic, however, refused to recognize and honor its obligation under the bond.

In May 2003, BELL filed this suit. In its complaint, BELL includes three counts: (1) Count I against HRGM for breaching the subcontract; (2) Count II against HRGM and Atlantic for breaching the performance bond; and (3) Count III against Atlantic for breach of fair dealing and good faith. In Count III, BELL is essentially seeking consequential damages in excess of the $409,000 cap stated in the bond.

## II.

Atlantic asserts that a claim for breach of fair dealing and good faith is not recognized under Maryland law. Under Maryland law, "a contract of suretyship is a tripartite agreement between a principal obligor, his obligee, and a surety, whereby the surety becomes liable to the obligee at once upon the failure of the principal to perform." *Inst. of Mission Helpers of Baltimore City v. Reliance Ins. Co.*, 812 F.Supp. 72, 74 (D.Md.1992). Thus, "[t]he traditional rules of contract interpretation determine the liability of a surety." *Id.*

In *Republic Ins. Co. v. Bd. of County Comm'rs of St. Mary's County*, 68 Md. App. 428, 511 A.2d 1136 (1986) ("*Republic I*"), the Maryland Court of Appeals stated:

> Maryland does not recognize failure to perform a contract as giving rise to a tort action for "bad faith." Indeed, if the [obligee] were successful in its attempt [to plead a failure to perform a contract claim as a tort action for bad faith], practically every breach of contract would give rise to an action in tort for "bad faith." Every breach of con-

tract could, and probably would, result in claims in both contract and tort. The "bad faith" allegation would likely become a "boiler plate" averment in every suit for breach of contract.

> We refuse to employ some supposed "public policy" argument which would obfuscate the distinction between contract and tort by intertwining one with the other. Instead, we hold that a breach of contract does not, under the circumstances of this case, give rise to a tort action for "bad faith."

*Id.* at 1138; *see also Mission Helpers*, 812 F.Supp. at 74.

BELL, relying solely on *Republic Ins. Co. v. Prince George's County*, 608 A.2d 1301 (Md.App.1992) ("*Republic II*"), argues that Maryland courts do, in fact, recognize claims for breach of fair dealing and good faith in the context of surety contracts. In *Mission Helpers*, the Court addressed that identical argument:

> In [*Republic II*], the court applied insurance law principles to a surety agreement. However, that court did not permit the *obligee* to assert a claim of bad faith against the surety; instead, the surety could not collect indemnification from the *principal* because of a bad faith failure to settle the claims of the obligee. As in this case, the obligee in that case could recover only under a contract claim.

*Mission Helpers*, 812 F.Supp. at 75 (emphasis in original). Thus, *Republic II* does not give rise to a "bad faith" tort action by the obligee against the surety. Accordingly, Count III will be dismissed.[1]

1. BELL also argues that its claim in Count III is a contract claim, rather than a tort claim. This argument also fails. First, if Count III is merely a breach of contract claim, it is duplicative of Count II. Second, BELL's complaint makes clear that Count III is not a contract claim. (*See, e.g.,* Compl. ¶ 35 ("Atlantic Mutual's refusal to honor its obligations under Bond 4 was done intentionally, in bad faith,

with malice, with the intent to injure BELL, and/or in wanton disregard and/or willful ignorance of BELL's rights.").) Finally, to the extent BELL relies upon Count III to receive consequential damages in excess of the stated limit in the bond, such damages are not available. As the Court stated in *Republic I*:

> [T]he bond, itself, clearly defined the total financial obligation of the surety. That ob-

A separate order is being entered herewith.

ORDER

For the reasons stated in the accompanying memorandum, it is, this 5th day of August 2003,

ORDERED that Atlantic's motion to dismiss Counts III is granted.

ligation, as so defined, was accepted by the [obligee]. In accepting the bond with its condition of limited liability unambiguously stated thereon, the [obligee] passively consented to the liability limitation on the face value of the bonds.
511 A.2d at 1138.